DEITSCH v. TRANS ST. MARY'S TRACTION CO.

1. Street Railroads—Operation—Negligence—Collision with Vehicle.

A street-railway company has no exclusive right to the use of that portion of the street occupied by its track, but persons using the street have a right to drive upon or across it whenever necessary, provided they exercise reasonable care and caution in so doing, and they also have a right to rely to some extent upon the watchfulness and prudence of the motorman in charge of a car and upon his ability to stop within a reasonable distance.

2. Same—Contributory Negligence—Crossing Tracks.

Street railways have ordinarily the right of way over other vehicles, and the driver of a vehicle owes the duty of looking before going onto the tracks; but when the circumstances are such that he may reasonably assume, and honestly think, that he has time to cross, it is not negligence for him to attempt to do so, even if a car be in sight and coming.

Error to Chippewa; Steere, J. Submitted October 15, 1908. (Docket No. 72.) Decided November 30, 1908.

Case by Frank Deitsch against the Trans St. Mary's Traction Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Horace M. Oren* (*John H. More,* of counsel), for appellant.

*George B. Holden,* for appellee.

MOORE, J. The plaintiff, a young man, was in the employ of a circus company that exhibited at Sault Ste. Marie. His duty was to drive a six-horse team which drew a circus wagon or van. The horses were hitched to the van in ordinary fashion, in teams two abreast. The distance from the heads of the lead horses to the rear

of the van was 54 feet. While attempting to cross the track of defendant company with the above-described outfit, Mr. Deitsch was struck by a street car owned by defendant, and severely injured. For these injuries he sued the defendant, and recovered a verdict. The accident happened at about 10 o'clock at night. The case is brought here by writ of error.

The plaintiff gave testimony tending to show that when he started to cross the track the approaching car was so far away that he supposed, and had a right to suppose, he had ample time to cross the track; that the car was in fact run at a speed in excess of 20 miles an hour. It was the claim of the defendant that the car was run slowly. In addition to the testimony offered, the jury also saw the premises where the collision occurred. Upon the cross-examination of the plaintiff the following occurred:

"*Q.* Now, Mr. Deitsch, when you testified here on the last case, you were asked this question: Assuming that you were approaching the street crossing with this rig, a six-horse team, and so on, and you saw the car approaching, coming at an apparent rate of about six miles per hour, how far would you, in your judgment, consider that the car should be away to justify you in starting to cross?

"*A.* Well, that is something I could not tell, unless it was coming right there at the crossing.

"*Q.* You testified in the previous case that you would not consider it reasonably safe to make the crossing under those circumstances if the car was less than 500 feet away, did you not?

"*A.* Well, I could not figure it out or—

"*Q.* Well, didn't you so testify?

"*A.* Yes, but—

"*Q.* Answer my question, didn't you so testify?

"*A.* I testified; yes, but—

"*Q.* And that was your deliberate judgment at that time, was it not?

"*A.* Well, I could not tell unless I was at the crossing.

"*Q.* You did so testify, didn't you?

"*A.* Well, I said I could tell if I was right there.

"*Q.* No; I say you testified just as I have said here?

"*A.* Yes; but I had no idea of the distance or anything. I could not figure it. I didn't know.

"*Q*. When you were questioned on the previous trial you said that when you would come to a crossing that way, and saw a car coming at an apparent rate of six miles per hour, and only about an ordinary block away, that you would not consider it reasonably safe to attempt a crossing, didn't you?

"*A*. I have no idea—

"*Q*. Did you so testify?

"*A*. I so testified—

"*Q*. How?

"*A*. Yes, but I don't know how big a block was or anything.

"*Q*. You don't know how long an ordinary city block was?

"*A*. No, sir.

"*Q*. And yet you have been in all the leading cities of the United States and Canada driving on the streets?

"*A*. Yes, sir.

"*Q*. And you know that the distance from that second light to where your team was when you made that crossing was about the length of an ordinary city block, didn't you?

"*A*. I didn't know just how far it was.   I know there was two lights there."

On the direct examination he had testified that when he started to cross the track the car was beyond the second arc street light.   Other witnesses testified to the same thing.   A plat made from actual measurement shows that the second arc light was 460 feet from the place of collision.

Many assignments of error are made, but we do not think it necessary to discuss them all.

Counsel asked the court to charge the jury:

"Except in case of necessity, such as did not exist in the case at bar, plaintiff would have no right to turn upon the track if it was reasonable to suppose that his occupancy of the track would compel the car, in order to avoid collision or injury, to reduce its speed below that at which it had the right to run.   The right of way on its tracks belongs primarily to the street-car company in this sense, viz., that while vehicles have also the right to drive on and across the portion of the roadway occupied by street-

railway tracks, when and where the tracks are not in actual occupancy of street cars, yet vehicles are required to turn out and yield the right of way in the face of approaching cars, and are also not to turn upon street-railway tracks in the face of approaching cars so as to impede their lawful movement and progress."

It was claimed that the defendant had the legal right to run its cars at this location in the city at a speed of 10 miles an hour, and that, in view of the plaintiff's cross-examination, it was error to refuse the above request. The trial judge upon that feature of the case charged the jury as follows:

" In other words, to make it more concise, it is the law that in all cases of negligence, before the plaintiff can recover he must show to the satisfaction of the jury that there was negligence on the part of the defendant which caused the accident, and also that he was free from negligence on his part, and did not by his carelessness contribute to the injury.

" It is charged in this case, as a ground of negligence, that this car was being run at an unlawful rate of speed; that it was recklessly and unskillfully managed. In reference to this allegation that defendant was driving the car at an unlawful and excessive rate of speed, you are instructed that it appears, and is conceded in this case, that, under an ordinance of this city granting a franchise to the defendant street-car company, it was permitted to run its cars along the street on which this collision occurred at a speed of not to exceed 10 miles an hour. Therefore it would not be negligent for the company to run its cars at 10 miles an hour or at any speed less than that. So far as the respective duties of the parties in this case are concerned, you are instructed that a street-railway company has no exclusive right to the use of that portion of the street occupied by its track, but a person using the street has a right to drive upon it or across it whenever necessary, provided that person exercises reasonable care and caution in so doing. And people have a right to rely to some extent upon the watchfulness and the prudence of the motorman in charge of the car, and upon his ability to stop his car within a reasonable distance. It would be the duty of the motorman in this case, who represented the company, and who was in charge of the

car when running it, to be cautious and vigilant, not to run his car at an unlawful or dangerous rate of speed, to watch out and give reasonable and timely warning of the approach of his car to travelers upon the street, or who were about to go upon the track ahead of his car, and to check or stop his car when it seemed to be absolutely necessary to do so to avoid obstructions on the track, or collisions which might, and evidently would, result if he did not do so. And it is the duty of the motorman, if he observed an obstruction on the track ahead of him, to prevent a collision, if it is possible to do so, by stopping his car within the range of his ability. He has no right to recklessly continue on, but is bound to use the same care in preventing a collision as the driver of a wagon or any other vehicle along the street would be expected to use. It would not be the duty of the motorman in this case to slacken the speed of his car if the car was not exceeding 10 miles an hour, unless the track ahead of him was occupied, or reasonably likely to be occupied, by some obstruction, such as a pedestrian crossing, or a vehicle, that in the ordinary course would not be out of the way, and would be placed in danger of being hit, unless the car was stopped or the speed slackened. Where a vehicle comes upon a track unexpectedly, and obstructs a track which was previously clear, the speed at which the car was going at the time at which the obstruction came within range where a collision would be apprehended would be the speed to be considered by the jury in determining whether the car was going at an unlawful rate of speed, and in this case upon that question the issue would be whether or not, at the moment the front team of horses drawing this circus van turned across the track, the car was going at a rate of speed exceeding 10 miles an hour. If it was not at that moment going at a rate of speed in excess of 10 miles an hour, the jury cannot find negligence in this case against the defendant upon the question of speed.

"Now, on the other hand, the driver of a vehicle upon a public street is bound to take notice of existing conditions, and govern himself accordingly. The plaintiff in this case was the driver of a heavy vehicle. When he contemplated crossing the track on which he saw a car coming, he was bound to know that cars on railway tracks run down the rails on the track, and that it is impossible for the motorman to turn out or to turn aside to

avoid a collision, as the driver of an ordinary vehicle can do. It was easy for the plaintiff to turn aside and to avoid a collision by changing the course of his team, and it was impossible for the motorman to avoid a collision by turning out. The motorman's only means of avoiding a collision is to stop the car, and the plaintiff is bound to know that such was the case, and to know that, from the weight of the car, it could not be stopped instantly. It is therefore, as a matter of law, negligence which precludes recovery for the driver of a vehicle to suddenly turn directly in front of an approaching car and to attempt to cross the track, unless the car was so far away he could safely do so, as it appears to him, relying on the car not reaching him, if it is not running at an unlawful rate of speed, because he has a right to assume, at such a time, that the car was not running in excess of the rate of speed fixed by law. So long as this plaintiff with his team was traveling down the street alongside of the track, parallel to it, with no indication of an intention upon his part to turn across, the motorman would have no reason to apprehend a collision, or to exercise special care, or to check his car, and he would not be required, as a matter of law, to do so.

"Street railways have ordinarily the right of way over other vehicles as they approach each other, and the driver of a vehicle owes the duty of looking before going onto a track. But when the circumstances are such that he may reasonably assume, and honestly think, that he has time to cross, it is not negligence for him to attempt to do so; even if the car be in sight and coming. But if the approaching car is so near, or coming at such a rate of speed that, to a reasonably cautious and prudent man, it would appear unsafe and uncertain, under the circumstances as they presented themselves at the time, to attempt to cross, then the party doing so takes his chances, runs his own risk, and if he is hurt, his own carelessness and contributory negligence prevent a recovery in court for any injury he may sustain. Now in this case it is undisputed that the plaintiff was driving a six-horse team, hauling a heavily loaded wagon. It is undisputed that the car was approaching him, and that he saw it. Under those circumstances it was his duty to exercise the especial care and caution to avoid a collision which such circumstances demand of a reasonably cautious and prudent man, and he had no right to take any chances, or to gamble upon the

possibility of getting across; and, if he did so, he cannot afterwards appeal to the courts for compensation for losing on the gamble. He can only recover in this case by showing that the car was so far away, at the time that he turned upon the crossing, that he could reasonably assume that he might cross before the car reached him, if the car was running at a lawful rate of speed, and that he did have a right to assume. If the car was running at an unlawful rate of speed, he could not even then recover, unless he exercised reasonable care and caution. Even though the car was not running at an unlawful rate of speed, if he suddenly turned upon the track when the car was too near him for an accident to be avoided, and if he turned upon the track when the car was so close that the motorman had no reasonable warning and opportunity to get his car under control, and stopped before the accident, then the plaintiff cannot recover. In order to recover in this case he must satisfy you that the car was running at an unlawful rate of speed; that it was not under control; that it was so very far away that he could have safely passed if the speed had not been excessive, such as an ordinarily prudent man under like circumstances would exercise. In other words, briefly stated again, he must satisfy you that the accident was wholly due to the unlawful, negligent, and reckless manner in which the car was run, and not to any contributory negligence on his part."

In *Ryan* v. *Railway Co.*, 123 Mich. 597. the court said:

"We have said that street railways have ordinarily the right of way over vehicles, and that the driver owes the duty of looking before going upon the track. But both have rights upon all parts of the highway, and a driver is not obliged to wait until all cars in sight pass before attempting to cross. If he were, his progress would be slow. There is testimony in the case that the whole car could have been seen from the place where the accident occurred when it reached the top of the hill, which was two blocks away. The plaintiff stated that he looked to the point of the hill, and saw no car, and thought he could get across. He estimated the distance at 75 or 80 feet. Others make it more."

In a concurring opinion written by Mr. Justice GRANT, it is said:

"There was testimony that the car was running down this hill at a speed of 30 miles an hour. I do not think the evidence conclusively shows that plaintiff was from 15 to 20 feet only from the car when he attempted to cross. If this were so, he would clearly have been guilty of contributory negligence. He had got nearly across the track when the hind wheel of his buggy was struck. There was testimony that the car was more than 100 feet away when plaintiff started to cross. I think it was for the jury to determine the speed of the car, its distance from plaintiff when he turned to cross, and the negligence of defendant and contributory negligence of plaintiff."

In *Chauvin* v. *Railway*, 135 Mich. 85, Chief Justice HOOKER, speaking for the court, said:

"The use of cars upon highways does not deprive persons of the right of walking and driving. They are constructed and operated upon the assumption that they will be driven upon and over, and that mutual care will be taken to avoid collisions. Necessarily the driving public must exercise some judgment in relation to the opportunity to cross tracks, especially in places where cars are always in sight; and, as we have intimated in another case, if one were to be always chargeable with negligence for driving upon a track when an approaching car was in sight, there are places where he could never cross the track without being negligent. When, in the exercise of common prudence, he may reasonably think there is time to cross safely, he is not chargeable with negligence."

See, also, *Moran* v. *Railway*, 124 Mich. 582; *Gaffka* v. *Railway*, 143 Mich. 456; *La Londe* v. *Traction Co.*, 145 Mich. 77.

The case was tried with care. The defendant has no just reason to complain of instructions as to the law of the case.

Judgment is affirmed.

GRANT, C. J., and BLAIR, HOOKER, and McALVAY, JJ., concurred.