THEISEN *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE —HIGHWAYS AND STREETS.

Knowledge of a person injured at a street railway intersection, that cars were required by ordinance and were accustomed to stop before crossing the intersection, and his reliance on the fact, have a material bearing on the question of contributory negligence in driving a hose cart across in front of the car, which he saw approaching some distance from the street intersection.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE—FIRE DEPARTMENT.

Such reliance on the ordinance and custom, where the city charter also gave the fire apparatus the right of way over other vehicles, made the question of contributory negligence a question of fact.

3. SAME.

If the driver had his horses under control and attempted to cross in front of a car which he saw from 40 to 70 feet away from the usual stopping place, it was for the jury to say whether he was justified in relying on the motorman's performance of his duty to stop the car.

[1]As to liability of street railway company for injuries caused by collision with fire apparatus, see note to *Dole* v. *New Orleans R. & L. Co.* (La.), 19 L. R. A. (N. S.) 623.

Error to Wayne; Hosmer, J. Submitted June 23, 1910. (Docket No. 137.) Decided September 28, 1910.

Case by Anthony Theisen against the Detroit United Railway for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Brennan, Donnelly & Van De Mark* (*A. B. Hall,* of counsel), for appellant.

*O'Neil & Command,* for appellee.

BLAIR, J.   Plaintiff, while driving a hose cart to a fire in the line of his duty as an employé of the fire department, was injured in a collision with one of defendant's cars at the intersection of Brush and Adams streets in the city of Detroit. Defendant was operating a double-track line on Adams avenue and a single-track line on Brush street. Plaintiff was proceeding east on Adams avenue at a speed of about 10 miles an hour, requiring a space of 150 feet within which to stop his horses. There is a building at the northwest corner of Brush and Adams extending out to the sidewalk lines of both streets. The city charter gives to the fire department vehicles the right of way over all other vehicles except the United States mail vehicles. The ordinances of the city of Detroit require street railway cars approaching an intersecting street occupied by other tracks to come to a stop at least 20 feet in front of the intersecting tracks. The hose cart proceeded without slackening speed until it approached within 40 feet of the track on Brush street, when the plaintiff discovered a car approaching from the north 40 to 70 feet away and proceeding, according to his testimony, at a speed of 12 miles an hour. There is a conflict of testimony as to whether the car stopped before crossing the tracks on Adams avenue, the plaintiff and his witnesses claiming that the car did not stop, and the defendant's witnesses claiming that it did. Upon seeing the car, the plaintiff urged his horses across the tracks, and the hose

cart was either struck by the car or struck the car in such a manner as to completely turn over the hose cart and throw it on the sidewalk at the southeast corner of Brush and Adams.

Defendant's motorman testified:

"To my best judgment I stopped about 25 feet north of the Adams avenue track that night. The front part of the car I was on was back of the building line of the terrace on the corner about 8 or 9 feet. When I stopped at the corner, I could see west on Adams avenue 150 or 200 feet. At that time the car just made a momentary stop, and then went right on again. * * *

"Q. When you got to the north curbstone on Adams avenue, you saw the hose cart?

"A. I noticed it then; yes, sir. * * *

"Q. Then you say that you had only gone 13 feet, about 13 feet when you saw the hose cart, and still you went 23 feet before you stopped the car?

"A. About that.

"Q. It took you 23 feet to stop the car in when you had only been going 13 feet from a full stop, is that right? Now, when you passed the line of the terrace, did you make any effort to look in a westerly direction to see if any vehicle was coming?

"A. I looked when I made the stop. I don't know as I looked when I passed that certain point there."

Capt. Courtney testified:

"Why, we were about, I should judge, about 40 feet from the Brush street track on Adams, proceeding east, when I noticed the car coming south. I presume it was up maybe about 75 feet from the crosswalk of Adams avenue on Brush, coming south.

"Q. Where was the hose cart situated on Adams with reference to the track?

"A. Well, we were up on right-hand side of the street. We were practically at the south track on the south side of the street. There is a double track along there on Adams avenue. * * * The cars usually stop before they cross that intersection. The car was going, in my estimation, 30 miles an hour at the time they struck the hose wagon. It was going faster than we were. The distance between the nearest track and the curb would be about 15 or 16 feet."

The questions for our consideration, as stated by counsel for defendant and appellant in their brief, are as follows:

"While there are 15 assignments of error in the record, the defendant and appellant relies for reversal upon the error of the trial judge in his failure to direct a verdict at the close of the plaintiff's case, and upon the theory of his charge that because an ordinance of the city required the street cars to stop at least 20 feet in front of intersecting tracks, and because an ordinance of the city of Detroit gave the right of way to fire engines, that the driver of a hose cart could approach a street railway track at a point where it intersects with other tracks at a rate of speed of 10 miles an hour and without having his horses under control so that he could stop them within 150 feet. It was the theory of the trial judge that, while the driver of a hose cart approaching a street railway track on a street where there was no intersecting track would be required to obey the rule laid down by this court governing all persons approaching a street car track, this rule would not be applicable where the hose cart was proceeding along a street containing a car track and where the driver relied upon the ordinance requiring all street cars to stop at least 20 feet before intersecting tracks."

It appeared from plaintiff's testimony that he was familiar with the ordinance requiring the cars to stop and with the custom of the defendant's employés to obey the ordinance and bring their cars to a stop, and that he relied upon their performing such duty in approaching this crossing. This knowledge and reliance of the plaintiff has a distinct bearing upon the question of his contributory negligence. *McKernan* v. *Railway Co.*, 138 Mich. 520 (101 N. W. 812, 68 L. R. A. 347). And these facts make this case, so far as contributory negligence is concerned, a stronger case for the plaintiff than the case of *Garrity* v. *Railway Co.*, 112 Mich. 369 (70 N. W. 1018, 37 L. R. A. 529), where the cars were required to and did cross the street before coming to a stop.

Furthermore, if the driver saw the car from 40 to 70 feet north of the usual stopping place, we cannot say, as a matter of law, he might not have been justified in at-

tempting to cross, if his horses were under control, in reliance upon the motorman's performance of his duty. *Garrity* v. *Railway Co.*, *supra*.

We are, therefore, of the opinion that the question of plaintiff's contributory negligence was for the jury, and that the circuit judge did not err in refusing to direct a verdict for defendant.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.