## South Covington & Cincinnati St. Ry. Co. v. Hardy

(Decided February 20, 1913.)

### Appeal from Kenton Circuit Court.
(Criminal, Common Law and Equity Division.)

1.   Street Railroads—Rights of Passenger Who Rides on Step of Crowded Car.—A person who is compelled to ride on the step of a car because there is no sitting or standing room inside the car, or comfortable standing room on the platform, is nevertheless a passenger, and the company owes him the same high duty of exercising care to protect him from danger that it does passengers who are seated in the car.

2.   Street Railroads—Liability of Company for Injuries to a Passenger Riding on the Steps of the Car.—Where a passenger on a street car, on account of its crowded condition, is compelled to ride on the steps, the company is liable in damages for injuries sustained by him as a result of its negligence at a time when he is exercising ordinary care for his own safety.

3.   Street Railroads—Rights of Passenger Who Boards Car Knowing He Must Ride on Steps.—When the inside of a car is so crowded with passengers that there is no sitting or comfortable standing room, and the rear platform is equally crowded, a passenger, who stands on a step of the car exercising care for his own safety, cannot be said to have voluntarily assumed a place of danger or to be guilty of negligence in law.

4.   Street Railroads—Liability of Company for Accepting Passenger Who is Compelled by Crowded Condition of Car to Ride on Steps.—When a company accepts a passenger on a car, and he is compelled to ride on the step because he cannot, without pushing and crowding other passengers, get standing room on the platform or elsewhere, he is entitled to the same protection as if seated in the car, and the company is charged with the duty of taking notice of the danger, if any, that attends his position, and must exercise corre-

sponding care to protect him from accident. When the car stops to receive passengers who are permitted to board it, although it may be so crowded as to make it necessary that they should ride on the steps they will be treated as having been invited to enter the car and as having been accepted as passengers.

5.   Evidence—Expert Evidence as to Probable Permanency of Injuries.—There are many cases in which an expert cannot say with absolute certainty whether an injury will be permanent or not, alalthough in his opinion and best judgment it will be, and so when witnesses qualified to express an opinion give it as their best judgment that the injuries are permanent, the court may submit this issue to the jury.

ROBERT C. SIMMONS, for appellant.

LESLIE T. APPLEGATE, LEWIS L. MANSON, and WALKER C. HALL, for appellee.

Opinion of the Court by Judge Carroll—Affirming.

The appellee, Hardy, while a passenger on one of appellant's street cars, received serious and permanent injuries by falling or being thrown from the car while it was running at a high rate of speed. In this action to recover damages for the injuries so sustained, the jury returned a verdict in his favor for $2,200, upon which judgment was entered.

The petition as amended charged that the car upon which appellee was traveling as a passenger became so crowded that he was obliged to ride upon the step of the car, and while so riding was thrown from it by other passengers who were thrown against him by the swaying, rocking and jerking of the car, which was being operated at a high and unusual rate of speed. The answer was a traverse and plea of contributory negligence. The facts surrounding the accident are substantially these: Appellee, who was employed as a mechanic in Cincinnati, boarded one of appellant's cars at Latonia for the purpose of going to his work. The overwhelming weight of the evidence shows that the car when appellee got on and when the accident occurred was crowded with passengers who were packed in it, as one witness said, "like sardines." The seats and aisle were filled, and as many were standing on the rear platform as could crowd on it.

The evidence for appellee is that when the car stopped to let him get on the rear platform this platform was so crowded with passengers that he could not get standing room on the platform or on the step nearest to the platform, and so was obliged to, and did, get on the bottom step, on which step there were at that time two other

passengers. After this the car again stopped, and three other passengers got on, two of whom were compelled to stand on the bottom step, while the third took a position on the bumper or coupler that projected from the rear end of the car.

On the other hand, there is some evidence for the company that when appellee boarded the car there was standing room on the platform as well as inside of the car. On this point the conductor testifies that when he saw appellee get on the car he told him to get inside, that there was room for him to get in. This is all the conductor said in reference to the crowded condition of the car.

It is also shown that the car was several minutes behind its schedule time, and that in going down a heavy grade called Buena Vista Hill, it was running at an unusually high rate of speed, and that the track on this hill was not in high class condition. It further appears that in going down this hill the car jerked and rocked and bounced to and fro with the result that a number of the passengers on the rear platform were suddenly thrown against appellee, who was standing on the bottom step of the car, holding with both hands to iron railings or guards on the car. When these passengers were thus thrown violently against appellee, his handholds were broken loose or gave way, and he was thrown or pitched from the car, striking his head on a pole near by the track.

With the evidence in this condition the court instructed the jury in substance, that if they believed from the evidence that while appellee was exercising ordinary care for his own safety the employes in charge of the car so negligently operated it as to cause it to lurch and swerve, and by reason thereof other persons on the car were thrown against appellee, thereby causing him to lose his hold on the car and to fall therefrom, they should find for appellee. But on the other hand, if they believed from the evidence that appellee was not exercising ordinary care for his own safety, or believed that the car was not so negligently operated as to cause it to lurch or swerve in such a manner as to throw other passengers against appellee, thereby breaking his hold on the car and causing him to fall, or if they believed from the evidence that appellee negligently extended or projected his head beyond the car so as to bring it in line with the

pole he was struck by, then in either of said events, they should find for the company.

Counsel for appellant offered the following instructions, which were refused:

"(1)   If the jury believe that plaintiff in boarding the car, was able to get upon the platform or inside of the car, but voluntarily chose to remain on the step of the car, and if the jury believe that there was more danger to one riding on the step than inside of the car, or on the platform, the jury shall find for the defendant.

(2)   If the jury believe that plaintiff, after he boarded the car, stepped off and permitted others to pass into the car or on the platform thereof, and that plaintiff knew that he was assuming a more dangerous position in so doing, than he would have occupied if he had stepped on the platform or in the car, if he was able to do either, the jury will find a verdict for the defendant.

(3)   Unless the jury believe that the car, at the time of the accident, was being operated at an unusually rapid rate of speed, or an excessive rate of speed, the jury will find a verdict for the defendant.

(4)   Unless the jury believe that by reason of an unusual jolt or jerk of the car, or by reason of unusual or excessive speed, the passengers or some one or more of them were caused to be thrown or fell against the plaintiff, and that thereby his hold was broken and he was caused to come in contact with the pole and sustained the injury complained of, the jury will find for the defendant."

The chief objection urged by counsel to the instructions given by the court is that they do not fully present the company's theory of the case and therefore the offered instructions should have been submitted. It will be observed that in the instructions given by the court the jury were directed to find for appellee only in the event they believed the car was so negligently operated as to cause it to lurch or jerk, thereby throwing other passengers against appellee, causing him to be knocked or pushed from the car, and if a car is caused to jerk or lurch or swerve by the negligent manner in which it is operated, and this movement of the car directly results in injury to a passenger on the car, we think there can be no doubt about the liability of the company. There is of course some motion attending the movement of every car operated by steam or other motive power,

and this ordinary and usual motion of the car is not to be treated as negligence in the operation of the car, but when this ordinary and usual motion of a car is violently increased by the negligent manner in which it is being operated, or the excessive speed at which it is run, the company charged with the duty of exercising a high degree of care for the safety of passengers subjects itself to liability for any accident that may happen to them by this negligent operation.

It is, however, argued by counsel for the company that the jury might have reached the conclusion that the ordinary and usual motion of the car while running was negligence, and therefore they should have been specifically directed, as pointed out in offered instruction number four, that the company was not liable unless appellee was injured by reason of some unusual motion or jolt or jerk of the car.

We think the court might with propriety have given instruction number four, and doubtless would have given it except for the fact that the theory embraced in this instruction was submitted in substance in the instructions given. The evidence in the case was overwhelming that the car was running at a high and excessive rate of speed, and that the jolting and jerking and lurching of the car was unusual. This condition was also established by the physical fact that appellee, who was holding with both hands to secure handholds, was thrown from the car by the impact of other passengers who were thrown against him by the lurching and jerking of the car.

In view of the quantity and character of the evidence upon this point the question whether the car was running at a high and excessive rate of speed and jerking and jolting in a violent and unusual manner, as testified to by witnesses for appellee; or was moving at a safe rate of speed, and the jerking and jolting no more than usually attends the prudent operation of a car, as testified to by witnesses for the company, was sharply presented and the jury could not have misunderstood or misapplied the law as submitted to them in the instructions given, or have returned a verdict in favor of appellee unless they believed the evidence of the witnesses in his behalf, and so we do not think the court erred in refusing to give this instruction.

Offered instruction number three is objectionable be-

cause it put the case upon the single issue of the speed at which the car was being operated. Under this instruction, although the jury might have believed that the accident was due entirely to the unusual and unnecessary jolting and jerking of the car, they could not find for appellee unless they believed it was being operated at an unusually rapid rate of speed. It is open to the further criticism that it singled out a fact in the case and directed the jury that unless they believed this single fact existed they should find for the company.

Offered instructions one and two may be considered together, the substance of them being that if appellee voluntarily chose to remain in a place of danger on the step of the car when he could have gotten a place on the platform or inside the car, the company was not liable for the accident that happened to him. These instructions should not have been given because the facts of this case did not authorize an instruction upon the theory that appellee voluntarily remained upon the step of the car when he could have gotten inside or on the platform. He was compelled by the crowded condition of the car to either ride on the step or push and shove his way to the platform where he might possibly have found uncomfortable standing room.

A passenger situated as appellee was cannot be said to have voluntarily taken a place on the steps so as to affect his right of recovery when he cannot find other standing room without pushing and shoving through passengers who have crowded the only other places at which there is standing room. If appellee could have found a comfortable standing place on the platform, and could have reached this place without shoving and pushing other passengers out of the way, then it might well be said that he voluntarily chose to stand on the step; but this he could not do, and so it was merely a question of riding on the steps or not getting on the car.

Passing these offered instructions, the next ground for reversal urged is that a directed verdict in its favor should have been ordered by the court. This contention is based on the ground that appellee, when he saw the crowded condition of the car, should not have attempted to board it, and that having done so, he assumed the risk incident to standing in a place that exposed him to more danger than if he had been inside of the car, or

standing on the platform, and therefore should not recover.

With the purpose of making our position plain we will assume in disposing of this feature of the case: (1) that appellee, when he boarded the car, knew he would be obliged to ride on the step; (2) that his position on the step exposed him to more danger than if he had been riding on the platform or in the car; (3) that if he had not been riding on the step he would not have been injured. Under these assumptions was appellee guilty of such negligence as should defeat a recovery?

In support of the proposition that he was, counsel rely on the case of South Covington & Cincinnati Railway Company v. Physioc, 124 Ky., 153; but that case is not controlling, because the conclusion reached by the court that Physioc was not entitled to recover was based on a state of facts very different from those shown by this record. In the Physioc case it appears from the opinion that Physioc was standing on the platform holding with one hand to a railing that prevented him from falling from the car, and that while so situated he voluntarily released his hold on the railing for the purpose of giving his fare to the conductor, and as he did so the car, which was going at a rapid rate of speed, reached a curve, in rounding which he was thrown to the ground by the lurching motion incident to the movement of the car in going around the curve. In holding that he could not recover, the court said:

"It was not the striking of the curve at too rapid a rate of speed that threw him to the ground, but according to his own statement, this was the result of his releasing his grasp on the handhold of the car. There is nothing in this record that tends to show that any act or omission on the part of the company was the proximate cause of appellee's injury, but on the contrary his own statement shows beyond question that he was injured by his own reckless negligence in releasing his grasp of the handhold while standing on the edge of the platform of the car."

Other cases are referred to by counsel, holding that where a passenger voluntarily rides on the step of a car when there is ample room inside the car, and sustains injury as a result of his exposed position, he cannot recover; but we have not been referred to any case ruling that it is such negligence as would defeat a recovery for a passenger to ride on the step of a crowded car.

On the contrary the great weight of authority is that it is a question for the jury to say whether or not a passenger is guilty of such contributory negligence as will excuse the company when he is injured while riding on the steps of a crowded car, or on the running board on the outside of a crowded car, a more dangerous place than the steps.

Thus in Verrone v. Rhode Island Suburban Railway Co., 27 R. I., 370, 114 Am. St. Rep., 41, Verrone was killed by falling to the ground while riding on the running board outside of a car that was going at a high rate of speed. In holding that whether his death was due to his negligence in riding on a running board or to the negligence of the company was a question for the jury, the court said:

"The plaintiff's intestate occupied this position on the running board because there was no vacant seat in the car, nor standing room between the seats. This was not negligence per se. If a railroad company accepts passengers whom it cannot accommodate inside its car, it must do all that human care and vigilance reasonably can to prevent accidents happening to them. * * * No doubt it is reasonable to impose upon a passenger the assumption of such risks as ordinarily attend the position he takes, but he has a right to suppose that the car will be run with due care, and this requires greater protection when passengers are occupying the running board than when all are safely seated. The shock sufficient to throw from the car a strong man holding on with both his hands might well be taken by the jury as evidence that the car was not properly managed. We think therefore that the plaintiff had made out a prima facie case and should have been allowed to go to the jury. It is evident from what we have said that it was a substantial issue in this case whether the car was proceeding as usual when the accident occurred or was propelled at an extraordinary rate of speed which would be likely to cause more violent and dangerous jolting and swaying than common. The passenger, when he took his place on the running board, assumed the risk of ordinary motion not of extraordinary violence."

In City Railway Co. v. Lee, 50 N. J. Law, 435, 7 Am. St. Rep., 798, Lee was injured while riding on the footboard or running board of a car. In holding that the

question whether he was negligent in so riding to such a degree as to defeat a recovery was for the jury, the court said:

- "When he was invited to enter, the seats and platforms of the car were filled, and he was obliged to take his place with others on the foot-board running longitudinally with the car. * * * * * * He was invited by the agent of the company to take a position on the car, and when so invited the only position left for him was that which he assumed. * * * * * * It appears to be the practice of the company to carry passengers there; not only on the car which he boarded but on the car with which he collided passengers were being carried in the same way. * * * * * The seats inside the car are not the only place where the managers expect passengers to remain, but it is notorious that they stop habitually to receive passengers to stand inside the car until the car is full, then to stand upon the platform until they are full, and continue to stop and receive them even after there is no place to stand except on the steps of the platforms.

"Neither the officers of this corporation, nor the managers of the cars, nor the traveling public seem to regard this practice as hazardous, nor does experience thus far seem to require that it should be restrained upon the ground of its danger. There is therefore no basis upon which the court can decide on the evidence that the plaintiff did not use ordinary care."

In Koontz v. District of Columbia, 24 App., D. C. 59, Koontz was injured while riding on a foot-board of a car, and in holding that he was not guilty of negligence in law the court said:

"It is true the plaintiff, by taking a position and riding on the running or foot-board of the car, incurred the ordinary risk of such a position, which was greater than that of being inside the car, but to ride on the foot-board of a street car does not constitute negligence in law which would justify the court in directing the jury that such act of itself, was sufficient to convict the plaintiff of contributory negligence and to defeat his right to recover for the injuries suffered by him."

In Watson v. Portland & Cape Elizabeth Railroad Co., 91 Me., 584, 44 L. R. A., 157, the court said:

"It is a notorious fact that street railroad companies whose cars are propelled by electricity constantly accept

and invite passengers to ride upon the platforms of their cars when there is no room inside, and that persons having occasion to use such cars are frequently glad for even a foothold upon the platform step or foot-board. * * * * And we are not disposed to say, as a matter of law, that a passenger who rides upon the platform of an electric street car is thereby guilty of such contributory negligence as to prevent his recovery for injuries sustained through the fault of an employe of the company. We hold rather that it is a circumstance to be submitted to and decided by the jury."

To the same effect is Nolan v. Brooklyn City & New Town Railroad Co., 87 N. Y., 63, 41 Am. Rep. 345, and Pray v. Omaha Street Railway Co., 44 Neb., 167, 48 Am. St. Rep., 717.

Coming now to state our own views upon this question, which is an open one in this State, we agree that it might be negligence that would defeat a recovery for a passenger to ride on the step of a car when he could obtain a seat or comfortable standing room inside the car or on the platform without pushing and crowding other passengers.

But when the inside of a car is so crowded with passengers that there is no sitting or comfortable standing room, and the rear platform is equally crowded, a passenger who stands on the steps of the car exercising ordinary care for his own safety, cannot be said to have voluntarily assumed a place of danger or to be guilty of negligence in law. It is a matter of common knowledge that street railway companies in the operation of their cars stop to receive passengers when the inside of the car and the platform are both so crowded that there is little or no standing room in either place, and when a passenger is permitted to get on a car under these circumstances the company owes him the duty of exercising the same high degree of care for his safety as if he had a seat on the inside of the car. In other words, when the company accepts a passenger on a car, and he is compelled to ride on the step because he cannot, without pushing and crowding other passengers, get standing room on the platform or elsewhere, he is entitled to the same protection as if seated in the car, and the company is charged with the duty of taking notice of the danger, if any, that attends his position, and must exercise corresponding care to protect him from accident.

When a car is stopped to receive passengers who are permitted to board it, although it may be so crowded as to make it necessary that they should ride on the steps, they will be treated as having been invited to enter the car, and as having been accepted as passengers. The employes in control of the car are supposed to know, and are charged with the duty of knowing, when the car is so crowded that it is not safe to receive passengers, and when they stop to permit a passenger to get on, and he does get on, the company cannot excuse itself from liability, if he is injured by its negligence while in the exercise of care for his own safety upon the ground that he should not have boarded a car so crowded as to make it necessary that he should stand on the steps.

The appellee made out a case entitling him to go to the jury, and the court did not err in refusing to direct a verdict, or commit prejudicial error in the instructions given. The only two issues in the case were, whether or not the car was negligently operated, and whether or not appellee exercised care for his safety, and these issues were submitted by the instructions.

It is further argued that the court erred in permitting evidence as to the probable permanency of appellee's injuries to go to the jury, because it is said that the evidence was not sufficient to justify an instruction submitting as an element of damage the permanency of the injuries sustained. The injuries received by appellee were of such a serious nature that no question is made as to the amount of the verdict but it is claimed that appellant was prejudiced by the evidence of medical experts who were asked as to the probability of the injuries being permanent. These witnesses testified that they could not say with absolute certainty that appellee would not completely recover from the effects of the injuries, but expressed the opinion that he would not.

It is not required that the evidence shall show conclusively or without the shadow of a doubt that the injuries are permanent before a recovery can be had for this element of damage. There are many cases in which an expert cannot say with absolute certainty whether an injury will be permanent or not, although in his opinion and best judgment it will be, and so when witnesses qualified to express an opinion give it as their best judgment that the injuries are permanent, the court may submit this issue to the jury.

It is also said that the court erred in rejecting offered, evidence that some distance from the place of injury appellee was seen to swing outside the car and tap on a window. This act of appellee did not throw any light whatever on the cause of the accident, or tend under the facts of this case, in the slightest degree to show negligence on his part, because the evidence shows without contradiction that when he was thrown from the car he was not swinging outside the car or doing anything that could have contributed to the accident.

Upon the whole case we find no reason for disturbing the judgment, and it is affirmed.