RAHALEY *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS — CONTRIBUTORY NEGLIGENCE — USE OF STREETS.

In an action for injuries sustained in a collision between a street car and plaintiff's conveyance, his testimony that he looked both ways and could see no car, that his vision was obstructed at a distance of about 240 feet by vehicles and similar objects, that he believed he could safely cross, but was struck by a car as his rear wheels were clearing the track, that the car ran 650 feet after it struck him and its speed was 40 to 50 miles per hour, presented an issue for the jury as to his contributory negligence.[1]

2. SAME—TRIAL—CHARGE—DUE CARE.

In charging the jury the trial court erred in omitting to state the duty resting on plaintiff to act as a reasonably prudent man would and to state the degree of care also required of defendant's motorman; the language of the court's instructions being ambiguous.

3. SAME—STREETS—NEGLIGENCE.

The jury should also have been instructed that additional care was required of both plaintiff and defendant's servant because of the fact that the street was badly torn up and the crossing difficult to make, as shown by the testimony.

Error to Wayne; Donovan, J. Submitted April 22, 1913. (Docket No. 136.) Decided September 30, 1913.

Case by Michael Rahaley against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

[1] On the question of injuries by street car collisions with vehicles or horses, see note in 25 L. R. A. 508.

*Corliss, Leete & Joslyn* and *A. B. Hall,* for appellant.

*Washington I. Robinson,* for appellee.

MOORE, J.   The plaintiff recovered a judgment against the defendant for injuries received by him in a collision when he attempted to cross defendant's street railway track.   The case is brought here by writ of error.   We quote from the brief of appellant:

"In discussing the assignments of error, we propose to classify the assignments under four heads: (1) The refusal of the court to direct a verdict at the conclusion of the plaintiff's case; (2) the error claimed in the argument of counsel; (3) error in the charge of the court; (4) refusal of the court to grant a new trial."

1. Did the court err in refusing to direct a verdict in favor of defendant?   Counsel base this claim upon the theory that plaintiff was, according to his own testimony, guilty of contributory negligence. The accident occurred on Woodward avenue in Highland Park, in a thickly settled and busy neighborhood.   The paving was torn up on alternate sides of the street every other block, and the street intersections were filled in with loose planks and dirt, making the crossings very rough.   The plaintiff was driving a one-horse rig loaded with crockery and glassware.   He testified that before attempting to cross the tracks he looked and listened and could see up the street to the next street intersection, about 240 feet, where his further view was cut off by vehicles, including a moving van, which were crossing the tracks at that intersection, and that he saw no car.   He claimed he thought he had ample opportunity to get across and that he was nearly over when the rear wheels of his rig were struck.

There is testimony that the car was running 40 or

50 miles an hour and that it ran 650 feet after collid-
ing with plaintiff before it was stopped. The wit-
nesses for defendant told a different story. We think
the testimony offered on the part of the plaintiff made
a question for the jury. See *Ryan* v. *Railway Co.*,
123 Mich. 597 (82 N. W. 278) ; *Chauvin* v. *Railway*,
135 Mich. 85 (97 N. W. 160) ; *Deitsch* v. *Traction Co.*,
155 Mich. 15 (118 N. W. 489), and the cases cited
therein; *Hibbler* v. *Railway*, 172 Mich. 368 (137 N.
W. 719).

3. Was there error in the charge of the court?
Complaint is made to the following portions of the
charge:

"I charge you it was the duty of the motorman to
be watchful to see he did not collide in going along
the track when others were going over the track.

"I charge you again that the street car tracks form
a part of the public highway, and the public have a
right even to drive upon the tracks, and they drive
upon the tracks repeatedly; and if you believe from
the testimony in the case that the driver in this case
was exercising reasonable care and caution before he
went upon the track, if he looked back to see if the
car was approaching before he went across the track
as he claims, and, seeing none, he started on the
tracks, that he had a right so to do. And then it was
the duty of any one who attempted to go on to take
notice all the way in that way."

Again:

"I charge you again that, if the highway at the
point or location where the collision occurred was
obstructed by conditions for any length of time, the
defendant would be presumed to have notice of the
condition of the highway. That is the torn-up con-
dition, not that the tracks were torn up, but that they
required a crossing to be built over to cross the grass
plat between the T rails at each of the street cross-
ings; that fact also appears from the testimony."

Again:

"I charge you again, if you believe from the testi-

mony that the motorman had ample time to have dis-
covered the plaintiff's position and then made no at-
tempt to hold his car until it was too late, and the
collision occurred for that reason, then the company
would be held to be negligent. That he could in the
exercise of common prudence—the plaintiff might
have always reasonable time to make a crossing, and
make it so without negligence."

Again:

"And then again that the defendant company, by
reason of its tracks being laid in the center of Wood-
ward avenue, had no exclusive right to that portion
of the highway, and that the use by the cars of the
highways does not deprive the persons of their right
to drive thereon. They are constructed and operated
upon the assumption that they will be driven upon
and over, and mutual care should be used in both
cases by both parties."

Again:

"I charge you, then, that under the testimony in
this case that the motorman in charge of the car, if
you believe his testimony, said that he saw the plain-
tiff when he was first attempting to cross the tracks,
and he immediately realized and appreciated the
plaintiff's danger, it then became his duty to have his
car under control, in the way that any prudent per-
son would do, where a danger was nearby."

It will be noticed that much of this charge is am-
biguous, and it fails to state the duty on the part of
the plaintiff to act as a reasonably prudent man
should. It also fails to state that, if the motorman
acted as a reasonably prudent man should, he would
then have performed his duty. The law applicable to
cases like this has been so recently stated in the cases
cited that we deem it unnecessary to repeat what is
said therein.

It may be well to add, however, that when a street
is torn up so badly as this one was, with crossings so
difficult to make, this situation makes added care

necessary on the part of both the driver of the vehicle and the motorman. It is not necessary to discuss the other assignments of error.

The judgment is reversed, and a new trial ordered.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.