GREEN v. DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a street railway company for personal injuries caused by a collision between plaintiff's automobile and defendant's street car at a street intersection, testimony *held,* sufficient to show negligence on the part of defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE—ORDINANCES—RIGHT TO RELY UPON OBSERVANCE OF ORDINANCE.

In view of an ordinance of the city of Detroit requiring street cars to stop at crossing on signal to take on passengers, where plaintiff approaching the crossing saw a number of persons standing in the safety zone waiting for a car, the question as to whether or not he had a right to expect that the car would stop to take on said

On the question, of attempting to cross street in front of observed street car as contributory negligence, see note in L. R. A. 1917C, 692.

passengers was properly submitted to the jury, as bearing
upon the question of plaintiff's contributory negligence.

Error to Wayne; Law (Eugene F.), J., presiding.
Submitted January 24, 1922.   (Docket No. 134.)   Decided March 30, 1922.

Case by Max Green against the Detroit United Railway for personal injuries.   Judgment for plaintiff.
Defendant brings error.   Affirmed.

*Corliss, Leete & Moody* (*Frederic T. Harward,* of counsel), for appellant.

*Louis H. Wolfe* and *Benjamin & Betzoldt,* for appellee.

MOORE, J.   Plaintiff, on November 15, 1919, was driving his automobile east on Ferry avenue in Detroit.
His automobile came in collision with a car owned by the defendant which was going south on Chene street.
He received injuries and he brought this suit to recover his damages.   At the close of the testimony offered on the part of the plaintiff, and again at the close of all the testimony, the defendant's attorney moved for a directed verdict in its favor.   The judge overruled both motions.   The case was submitted to a jury which returned a verdict in favor of the plaintiff in the sum of $5,000.   The defendant moved for a rehearing for the following reasons:

(1)  Because said verdict is excessive.
(2)  Because said verdict is contrary to the overwhelming weight of evidence.
(3)  Because the court erred in failing to direct a verdict for the defendant by reason of the contributory negligence of the plaintiff.

The trial judge overruled this motion, filing his reasons in great detail.   The case is brought here by writ of error.

Counsel present the same reasons in this court why there should be a reversal of the case that they did in asking for a new trial, with the following additional reasons:

(*a*) The court erred in charging the jury in regard to the ordinance relating to speed of street cars inasmuch as the ordinance provided for an average rate of speed and the testimony was lacking in this respect.

(*b*) That the court erred in charging the jury in regard to the ordinance relating to street cars stopping on signal for passengers, as under the testimony in this case, this ordinance had no bearing on the question in issue.

(*c*) There was no actionable negligence proven on defendant's part.

The last named reason is presented in this court for the first time. When counsel first moved for a directed verdict he said:

"*Mr. Harward:* I move, your honor, at this time, to direct a verdict for the defendant on the ground of the contributory negligence of the driver, of the plaintiff—of course, if his testimony is true, and the testimony of some of the witnesses, there may be evidence of negligence on the part of the defendant, but it seems to me that under the testimony here, the plaintiff himself was careless of his own safety."

The record discloses an abundance of testimony which, if believed, showed negligence on the part of the defendant.

In overruling the motion for a new trial the judge said in part:

"In this cause plaintiff sued defendant to recover damages for personal injuries which he claims to have suffered as a result of the negligence of defendant's employees in operating a street car at the corner of Chene street and Ferry avenue in the city of Detroit on the 15th day of November, 1919, at about 2 o'clock in the afternoon. The weather was fair and the pavement dry. Chene street runs in a northerly and southerly direction and Ferry avenue crosses it at

right angles. There was a single street railway track on Chene street over which defendant's street cars ran but one way, from north to south. This crossing is within the three-mile circle from the geographical center of Detroit, and the testimony shows it to be a somewhat busy place as to traffic. Plaintiff was driving a Buick, two seated touring car known as a 'Light Six,' easterly on the south side of Ferry avenue, and the street car was coming from the north on Chene street; the front curtains of plaintiff's automobile were rolled up but the rear curtains were closed. There is some evidence tending to show that at a point about 70 feet north of the north line of Ferry avenue the street car was moving at the rate of 30 to 35 miles per hour. Plaintiff was entirely familiar with this location. Plaintiff testifies that he stopped his automobile about in the line of the curb on the west side of Chene street 20 feet from the street car track and looked, and that the street car was then coming about 200 feet north of Ferry avenue. At this point there were no objects in the line of plaintiff's vision to obstruct his view of the street car coming from the north. At this time some people were standing in the protected area for passengers to take the southbound Chene street cars at a location on the west side of Chene street just north of the north line of Ferry avenue. Plaintiff testified that he expected the street car to stop to take on these passengers. However, the car did not stop.

"An ordinance in force in the city of Detroit provides that street cars shall stop at street crossings to take on passengers on signal. This court will take judicial notice of the established custom that when people are standing in the protected areas at street crossings in the city of Detroit, it is a signal for the street cars to stop to take them on as passengers. This street car did not stop for the reason that it was fully loaded, and at about the middle of the block north of Ferry avenue, the conductor gave the motorman a signal of two bells to indicate to him that the car should not be stopped at Ferry avenue to take on more passengers.

"After stopping and looking as above related, plaintiff testifies that thinking he had time to safely cross

the street car track, he started his automobile at first or lowest speed.  He testifies he looked again and saw the street car about 200 feet or more distant and he still thought he could cross the street car track with safety for he still expected the street car to stop to take on the waiting passengers and proceeded at a speed of 4 or 5 miles per hour, and that when the front end of the car had reached a point close to the west rail of the street car track (given by him as one foot on direct and five feet on cross-examination), he saw the street car coming 70 or 75 feet away at a speed of 25 or 30 miles per hour.  He testifies that he then concluded it dangerous to attempt either to try to stop or to go ahead and he then turned his automobile to the right thinking he could make the turn and escape the street car by going south on the west side of Chene street between the street car track and the curb, but after plaintiff started to make this turn the street car struck his automobile near the left front wheel and he was thrown to the pavement and injured."

What is said above by the trial court as to the effect of the testimony offered on the part of the plaintiff is borne out by the record.

The testimony offered on the part of the plaintiff was to the effect that before entering upon the danger zone he stopped and saw the car so far away that he was justified in thinking he could cross in safety, and that he would have been able to do so had the motorman been in the exercise of due care.  As to this feature of the case it is within *Ryan* v. *Railway Co.*, 123 Mich. 597; *Chauvin* v. *Railway Co.*, 135 Mich. 85; *Deneen* v. *Railway Co.*, 150 Mich. 235 (13 Ann. Cas. 134) ; *Deitsch* v. *Traction Co.*, 155 Mich. 15; *Theisen* v. *Railway*, 163 Mich. 68; *Putnam* v. *Railway*, 164 Mich. 342; *Erdman* v. *Railway*, 175 Mich. 691; *Powell* v. *Railway*, 206 Mich. 698.

Was the verdict against the weight of the evidence? This court has considered that subject in the following cases: *Gardiner* v. *Courtright*, 165 Mich. 54; *Fike* v.

*Railroad Co.,* 174 Mich. 167; *Druck* v. *Antrim Lime Co.,* 177 Mich. 364; *Porth* v. *Cadillac Motor Car Co.,* 209 Mich. 89; *Lignell* v. *Bruhns,* 211 Mich. 346; *Mapes* v. *Boersma,* 216 Mich. 106.

The trial judge was decidedly of the opinion that the verdict was not against the weight of the evidence, and we see no occasion to disturb his finding in that regard.

Counsel complain of that portion of the charge relating to the ordinances. We quote from the charge:

"In considering the contributory negligence of the plaintiff himself, you have a right to take into consideration the two ordinances which have been introduced in evidence, *first,* that at this particular part of the line the ordinance prohibits the running of street cars at a rate of speed in excess of an average of 10 miles an hour, and *second,* that the ordinance which provides for street cars—that street cars shall stop on signal to take on passengers desiring to board a car; whether or not plaintiff had a right to expect that the car would stop to take on passengers may be considered by you as bearing upon the question of whether or not he was guilty of contributory negligence in attempting to cross Chene street with his automobile at the time in question.

"This question is whether a reasonably prudent man on approaching the intersection of Ferry (Warren) and Chene street and seeing a car approaching, as plaintiff did see it, and seeing a number of persons standing near the street car track or in the safety zone, would have a right to rely on the fact that the street car would stop to take on these passengers.

"You remember that ordinance provides that cars shall stop on signal. There is no evidence in this case that any signal was given, but the question of whether or not it is not a signal in itself for people to be standing in a protected area when a car goes by, is a question for you gentlemen to consider."

We think this charge was justified by the testimony and by what is said in *Theisen* v. *Railway,* 163 Mich. 68, and *Putnam* v. *Railway,* 164 Mich. 342.

The other assignments of error have had our consideration but we deem it unnecessary to discuss them. We find no reversible error.

The judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.

