MORRIS *v.* DETROIT UNITED RAILWAY.

1. TRIAL — NEGLIGENCE — PERSONAL INJURIES — EVIDENCE VIEWED FAVORABLY TO PLAINTIFF.

In an action against a street railway company by a passenger for personal injuries received by reason of alleged negligence of defendant's employees in starting the car while plaintiff was in the act of boarding it, in determining whether a case was made for the jury, the facts must be viewed in the light most favorable to the plaintiff.

On contributory negligence of passenger in riding upon platform of crowded street car, see notes in 2 L. R. A. (N. S.) 1191; 10 L. R. A. (N. S.) 352; 12 L. R. A. (N. S.) 831; 21 L. R. A. (N. S.) 972; 49 L. R. A. (N. S.) 135.

2. CARRIERS—STREET RAILWAYS—INFERENCES—NOTICE.

Although a street car stopped for a purpose other than to permit the alighting or boarding of passengers, evidence that plaintiff and others had boarded cars at that point before, that he was standing at the place where cars were customarily boarded, that he met the conductor face to face and stepped back to permit the conductor to precede him onto the car, *held*, sufficient to afford ground for reasonable inference that the conductor knew that plaintiff intended to board the car, and sufficient to charge defendant with knowledge of such intent.

3. SAME—NEGLIGENCE—DUTY OF CONDUCTOR—"ON BOARD."

In view of the fact that passengers sometimes boarded the cars at the point in question, and that the conductor had notice of plaintiff's intent to board the car, it was his duty to ascertain that all passengers were safely on board before signaling to proceed; "on board," meaning safely within closed doors, under the rules of defendant.

4. SAME — ASSUMPTION OF RISK — VOLUNTARILY REMAINING IN PLACE OF PERIL ON CROWDED CAR.

A passenger on a street car cannot be said to have voluntarily remained on the steps so as to assume the risk of injury from maintaining that position, if he could not have reached a position on the platform or in the car without pushing or shoving through passengers who had already crowded the only other available standing places.

5. SAME—CONTRIBUTORY NEGLIGENCE—CROWDED CAR.

Where plaintiff, hesitating to push or crowd his way onto the platform after boarding a crowded street car, stood on the steps while it went about ten feet, when it lurched and he fell and was injured, it cannot be said that he was guilty of contributory negligence as a matter of law, although it was his duty to reach a place of safety therein with reasonable celerity.

Error to Wayne; Perkins (Willis B.), J., presiding. Submitted April 11, 1923.    (Docket No. 51.)    Decided June 4, 1923.

Case by John A. Morris against the Detroit United Railway for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Don D. Williams* and *John Boughton* (*Codd, Bishop & Kilpatrick,* of counsel), for appellant.

*William G. Fitzpatrick* (*A. B. Hall,* of counsel), for appellee.

CLARK, J.    Plaintiff was at the corner of 33d street and Warren avenue in Detroit to take a street car to go east on Warren.    Junction avenue is the first street west of 33d.  . Double car tracks on Junction end in an intersection with .double tracks on Warren.    When an approaching east-bound car with trailer, which had left a loading station on Junction near the intersection and which had made the turn into Warren, was opposite the block between Junction and 33d the trolley came off.    The conductor of the motor car got off to replace the trolley.    Plaintiff left the corner and went to the rear exit door of the motor car.    The conductor returned to his car.    Plaintiff testified:

"*A.* Then as I got, I would say right at the door, the conductor came from around the car, and we met face to face, him coming from the west and me coming from the east, and met almost you might say in the door.    I stepped back to let the conductor get on, the conductor got on before I did.

"*Q.* What entrance or exit, what door?

"*A.* That was the exit door.

"*Q.* Exit door?

"*A.* Yes, sir, the front of the two rear doors.

"*Q.* Then, what took place?

"*A.* When I stepped on the car started just when I stepped on, the car started and I had a roll of plans under my right arm, plans and specifications, under my right arm, bunched under my arm; he started in the car, I started to step on, and the vestibule was crowded and I got up on the steps.

"*Q.* You call this vestibule, this rear platform, you mean?

"*A.* Yes, sir, I describe that vestibule until you get back of the cash box.

"*Q.* Oh, yes.

"*A.* I took hold of the column between the two doors, with my left hand, reaching back, and stood up on the steps, and was on the step when the car started. The conductor in getting in, the vestibule was crowded, and of course, he had to elbow his way, as he had to hold on to the box which stood out in front of him, and the car it ran possibly ten feet when it gave a lurch, * * * it threw me around, and the door came against my wrist * * * and in trying to catch myself I threw my plans * * * that were under my right arm, whirled around, and when I felt myself going I remember giving myself a push, which swung me around the front of the back car, directly in the front of the trailer, and the front wheels of the trailer caught my left foot."

He testified also that the car was so crowded that the conductor had "to wiggle his way in." Between the starting of the car and the lurch by which plaintiff lost balance, he did not enter the car.

"Because I have got a little bit of respect for others, and gave them time.

"*Q.* It was crowded and you could not get in?

"*A.* I could get in.

"*Q.* But you did not, you made no attempt?

"*A.* I did make an attempt to get in.

"*Q.* Why didn't you get in, if it was not crowded?

"*A.* Because I told you, I was waiting for the other passengers to get moved around, settle down, I was not pushing in to pack them in like sardines." * * *

When plaintiff attempted to board the car the entrance doors of both cars were closed. He testified that cars were customarily stopped most anywhere in that block for taking on passengers, that on other occasions he, and frequently others, had boarded cars at the place where he boarded on the day in question, and by exit doors as well as by entrance doors, and

"*Q.* Do I understand you to say that you have boarded these street cars at this point in the exit door?

"*A.* Yes, sir.

"*Q.* Have you, upon other occasions, seen the back door, or the entrance door closed and the exit door open and passengers go in the exit door only?

"*A.* Yes sir, many times.

"*Q.* And have you taken passage under those conditions?

"*A.* Yes, sir."

He also testified:

"*Q.* Have you ever seen any sign on the back platforms of these cars, with reference to the operation of the doors?

"*A.* Yes, sir.

"*Q.* What is the sign?

"*A.* Says 'doors must be closed before car is started.'

"*Q.* And were you aware of the fact, it was customary to do that?

"*A.* Yes, sir."

The negligence averred against defendant was starting the car while plaintiff was in the act of boarding and while the door was open. At the conclusion of plaintiff's proof a verdict for defendant was directed on the ground that plaintiff had been guilty of contributory negligence as a matter of law. Defendant had judgment. Plaintiff on error insists that he made a case for the jury.

The above statement of the case has been made having in mind the rule that on this question the facts must be viewed in the light most favorable to the plaintiff. The evidence indicates that plaintiff had the right to board the car through the exit door and at the place in question. Although the car did not stop to permit passengers to alight nor to permit boarding, plaintiff's standing at the place where cars were customarily boarded, his meeting the conductor face to face almost in the open door of the car and

his stepping back to permit the conductor to precede him into the car, afford ground for reasonable inference that the conductor knew that plaintiff intended to board the car, and are sufficient to charge defendant with knowledge of such intent.    *Green* v. *Railway,* 218 Mich. 59.

It was the duty of the conductor before signaling to proceed to ascertain that all passengers were safely on board.    *Keeley* v. *Railway Co.,* 168 Mich. 79. Under the rule of defendant above quoted, and under the facts here, on board meant within the closed doors.

The car started just when plaintiff stepped on. The door was open.    It could not be closed while he stood on the step.    He lost balance not by the starting of the car, but by the lurch after it had gone about ten feet.    In the meantime he had made an attempt to get in.    He admits that he could have gotten in by pushing and crowding, or by "wiggling in" as the conductor had done.    His testimony indicates that for the moment standing on the step, the car being in motion, he refrained from so pushing or crowding his way in.    It was his duty to board the car and to reach a place of safety therein with reasonable celerity.    Does his waiting or hesitating, under the circumstances and in the manner indicated by his testimony, constitute contributory negligence as a matter of law?    We think it does not.    We cannot say that he did not act as would a reasonably prudent man under the same circumstances.

We quote an applicable rule from syllabus of *South Covington, etc., R. Co.* v. *Hardy,* 44 L. R. A. (N. S.) 32 (152 Ky. 374, 153 S. W. 474):

"A passenger on a street car cannot be said to have voluntarily remained on the steps so as to assume the risk of injury from maintaining that position, if he could not have reached a position on the platform or in the car without pushing or shoving through

passengers who have already crowded the only other available standing places."

In like effect is the text of 5 R. C. L. p. 29. See, also, 10 C. J. pp. 1146-1149, and cases cited. Booth on Street Railways (2d Ed.), p. 556; Clark's Accident Law (2d Ed.), p. 80; 21 L. R. A. (N. S.) 972; 10 L. R. A. (N. S.) 352; 12 L. R. A. (N. S.) 831; 2 L. R. A. (N. S.) 1191; 20 N. C. C. A. 169.

Judgment reversed, with costs to appellant. New trial granted.

FELLOWS, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred. WIEST, C. J., did not sit.