TRAVELERS' INDEMNITY CO. *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—CROSSING ACCIDENT—AUTOMOBILES.
    Where the driver of an automobile testified that he started to cross defendant's street car track three or four hundred feet ahead of a street car, believing that he had ample time in which to cross, and the motorman disputed the statement, there was evidence to take the case to the jury, and the trial court properly declined to direct a verdict for claimed contributory negligence of the driver.

2. SAME—NEGLIGENCE—DUE CARE.
    The chauffeur was entitled to assume that the motorman would observe reasonable vigilance according to conditions, and it was his duty to have the car under such control as to admit of stopping it as soon as he could discern objects on the track.

3. SAME—COLLISIONS.
    Mutual care to avoid collisions is demanded and to be expected; and both parties on a busy street in a city were entitled to use their own method of travel and required to avoid accidents by the use of all reasonable precaution.

4. SAME—WITNESSES—EVIDENCE.

    A witness who had formerly been in defendant's employ as a conductor and run cars for nine or ten years, being familiar with the method of operating them and stopping cars under disadvantageous conditions, was qualified to express an opinion on the subject by hypothetical question and answer.

Error to Wayne; Mandell, J. Submitted June 7, 1916. (Docket No. 30.) Decided September 27, 1916.

Case by Travelers' Indemnity Company, as assignee of one Gustav W. Zanger, against the Detroit United Railway for damages done to the automobile of plaintiff's assignor. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*Wm. G. Fitzpatrick,* of counsel), for appellant.

*Fred L. Vandeveer* and *Orville H. Foster, Jr.,* for appellee.

STEERE, J. In this action, begun in justice's court, and on appeal retried in the circuit court of Wayne county, plaintiff recovered a verdict and judgment of $200 for damages done to an automobile belonging to one Zanger, plaintiff's assignor, when struck by one of defendant's south-bound street cars on Broadway, in the city of Detroit, between east Grand River and Gratiot avenues, in the early evening of January 12, 1913.

The assignments of error upon which defendant relies are refusal of the court to direct a verdict in its favor because of contributory negligence, submitting the case to the jury under a charge which permitted them to find the street car was negligently operated, and admitting testimony of a witness named Fish as to the distance in which the street car could be stopped.

No testimony was introduced by defendant. Plaintiff's testimony showed that the injured automobile belonged to Zanger and was being driven by his chauffeur, who had come to take him home from his place of business at 36 Broadway, east side, and, finding no parking room upon that side, was crossing the street, along which defendant's double tracks extended, to the opposite side, where he could find room to wait until Zanger came out to go home. It had been raining and the evening was misty, with the light fading at that time.

Ochs, the chauffeur, testified that he then had his lights lit and drove slowly north down the east side looking for a place to park, and, finding it necessary to cross over on account of cars being parked all along that side, watched his chance until he saw a south-bound street car pass, and, observing the next was coming south about a block and a half away, 300 or 400 feet beyond the first street north, and thinking he had plenty of time to get over, turned his automobile to the left to cross, driving slowly upon first speed, and just as he was about to cross the west track on which south-bound cars run this street car from the north struck his left rear wheel, violently throwing him around into another automobile, resulting in serious damage to the one he was driving, which he described in detail.

A witness named Kays, a draughtsman in the employ of the Edison Illuminating Company, with offices farther north on Broadway, testified that he was then on his way home and saw the accident. The first thing he remembered in that connection was noticing the chauffeur of the automobile, which was either stopped or running very slowly, approaching the car tracks, "look north and south on Broadway, and then start to cross the track." This witness also stated that there was then a trolley car coming "within about 40 or 50

feet or more than that," but subsequently explained that he was on the sidewalk just to the north of where the accident occurred, going south with his back towards the approaching trolley car, and first saw it when the front end got opposite where he was and within about 6 or 8 feet of the automobile; that he did not take notice of what the motorman was doing before the accident or until he stopped his car, which ran between 90 and 100 feet after striking the automobile, but he was familiar with the noise cars make in stopping—the grinding of the brakes, etc.—and heard no such noise previous to the time the street car struck the automobile; that he would judge the street car was going at least 15 miles an hour when the accident occurred.

The chauffeur's negligence was clearly a question for the jury. He testified that he was looking for a chance to cross, and availed himself of a time when there was no approaching car within the block, near the center of which he crossed; that he saw the car, which hit his left hind wheel, when it was 300 or 400 feet beyond the first street north, and thought he had plenty of time to get over ahead of it, while Kays, whose back was towards the approaching car, confirms his claim that he took note of the situation and looked both ways as the automobile was about to cross the tracks. This is not a case of failing to look and see the approaching car, but of reasonable judgment and prudence in attempting to cross after seeing it. If it was reasonable for him to believe he could cross safely, he was not negligent in attempting it. Provided the car was as far away as he testified, it would have to travel at an unusual rate of speed to catch him, and in forming a judgment he had a right to assume that a reasonable degree of care according to conditions would be observed by the motorman also. If by reason of the misty evening and fading light it was more

difficult for the motorman to observe clearly plaintiff's position and readily discover whether or not he had cleared the track, it was his duty "to have the car under such control as to admit of its being stopped after he became able to discern objects on the track, and before a collision with such objects should occur." *La Pontney* v. *Cartage Co.*, 116 Mich. 514 (74 N. W. 712).

Mutual care to avoid collisions was demanded and to be expected. Both parties were driving on a business street in a large city, which both had a right to use for their particular method of travel, but each in driving his conveyance was required to exercise all reasonable care and take precautions to avoid injuring others. Their duties were mutual. The questions of negligence and contributory negligence were questions of fact, properly left to the jury within the rule of the following cases:  *Garrity* v. *Railway Co.*, 112 Mich. 369 (70 N. W. 1018, 37 L. R. A. 529) ; *Ryan* v. *Railway Co.*, 123 Mich. 597 (82 N. W. 278) ; *Moran* v. *Railway*, 124 Mich. 582 (83 N. W. 606) ; *Chauvin* v. *Railway*, 135 Mich. 85 (97 N. W. 160) ; *Gaffka* v. *Railway*, 143 Mich. 456 (106 N. W. 1121) ; *La Londe* v. *Traction Co.*, 145 Mich. 77 (108 N. W. 365) ; *McQuisten* v. *Railway Co.*, 147 Mich. 67 (110 N. W. 118) ; *Deitsch* v. *Traction Co.*, 155 Mich. 15 (118 N. W. 489) ; *Clark* v. *Traction Co.*, 167 Mich. 694 (133 N. W. 927).

It is urged that testimony of the witness Fish as to the distance in which such a car might be stopped was inadmissible because the hypothetical question asked him did not contain sufficient controlling conditions, nor was there evidence as to the actual rate of speed of the trolley car which struck the automobile, and the witness did not properly qualify as an expert, never having worked as a motorman or operated a car. He had formerly been in defendant's employ as a conductor, for nine or ten years, and ran as such on cars

of the type of this one.  He testified that in such capacity he was familiar by observation with the method of operating them, and had seen them make stops on rainy days when the tracks were wet, and had knowledge of the distance in which trolley cars could be stopped, and at the speed the witness Kays testified this car, as described, was running—about 15 miles an hour or a little more—it could be stopped in from 50 to 70 feet on a wet or drizzly day.

We think the witness sufficiently qualified as having especial experience and knowledge entitling him to give opinion testimony on the facts stated in the hypothetical question asked, and that sufficient material facts based on the evidence were embodied in the question to render it permissible.  His answer was admissible for the jury to give such weight as they deemed it entitled to.

Finding no reversible error in this record, the judgment stands affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.