FLOKSTRA *v*. GRAND RAPIDS RAILWAY CO.

1. STREET RAILWAYS—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

> The driver of a one horse loaded coal wagon which is struck by a street car is not chargeable with contributory negligence where it appears that he was walking on the side of the wagon opposite that from which a street car was approaching from the south on the further track on the street he was crossing, and just between the wagon box

and the horse where he could see, and he made a careful observation just before starting across the nearer track and noted a car coming from the south over a block distant, and, at the rate his horse was traveling, decided he could safely cross, and twice as far, before the car arrived, provided it was run at the lawful speed, and he exercised the judgment of an ordinarily cautious and prudent man under like circumstances.[1]

2. SAME—EXCESSIVE SPEED—QUESTION FOR JURY.
   The question of speed of a street car is for the jury where the evidence as to the rate it is going when it strikes a wagon crossing the street is conflicting.

3. APPEAL AND ERROR—DIRECTED VERDICT—REVIEW.
   Where an adverse directed verdict is contended for, the testimony introduced by plaintiff is to be taken as true and viewed in the light most favorable to his contention.

4. STREET RAILWAYS—EXCESSIVE SPEED—PRESUMPTIONS.
   The driver of a wagon proceeding across a street has the right to assume that the speed of an approaching street car does not exceed that allowed by law.[2]

Error to the superior court of Grand Rapids; Dunham, J. Submitted June 25, 1917. (Docket No. 42.) Decided December 27, 1917.

Case by John Flokstra against the Grand Rapids Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Kleinhans, Knappen & Uhl,* for appellant.

*Hatch, McAllister & Raymond,* for appellee.

STEERE, J. Plaintiff had verdict and judgment against defendant in the sum of $1,300 for damages sustained by him on the afternoon of February 19, 1916, in a collision between a coal wagon he was

---

[1] On duty to look and listen before crossing interurban electric railway on company's own right of way, see notes in 15 L. R. A. (N. S.) 254; 23 L. R. A. (N. S.) 1224.

[2] On right of driver of vehicle to assume that motorman will give him time to cross track, see note in 5 L. R. A. (N. S.) 1081.

driving across defendant's tracks and one of its north-bound street cars. The accident occurred at the intersection of Pleasant street, along which he was driving east, and Lafayette avenue, along which defendant's double track extended north and south.

In asking reversal on a record containing numerous exceptions and various assignments of error defendant's counsel frankly and correctly center on the controlling issue, and say in their brief:

"The different assignments of error present but one legal proposition, which is that the plaintiff's own testimony shows that he was guilty of contributory negligence, and that the trial court should have directed a verdict for the defendant at the close of plaintiff's case and at the end of the trial."

Plaintiff was regularly employed with his single horse and coal wagon at cartage for the owner of a coal yard in Grand Rapids, and on the day in question had been sent to the city gas plant for a ton and a half of coke, which he had obtained, and was driving east along Pleasant street, walking on the north side of his loaded wagon, at the time of the accident. He could not see south over his load, but when just forward of it he had a clear view in that direction between the rear of his horse and the front of the wagon, and says, "I walked just between the horse and coal box, so I could see everything," although admitting that he was sometimes back of the front end of the wagon. He testified that as he came upon Lafayette avenue and approached the double car tracks he looked up and down that street from where he could see along it in both directions, saw no car was in view to the north, and, looking south, between his horse and wagon, observed there was a car coming from that direction over a block away and beyond Sycamore, the next street south of Pleasant, a distance estimated by him at between 500 and 600 feet; that his horse was

then close up to the west car track, and there was no danger in proceeding, for he had time to spare, twice enough time to cross, and "no danger at all when the cars come at a common rate," which he "figured on," and so he drove along, his horse going 2½ or 3 miles an hour, but the car came so that when he looked again it was within about 150 feet of him, and his horse's legs were then over the east track upon which the car ran; that the horse and front wheels passed safely over the east track, but before the wagon cleared it the car struck the back wheels and "knocked every spoke out of the hubs" and "smashed the wagon all to pieces." His further description of the accident relates to the time after he "came to" and was "picked up," in which he described the result of the collision to his person and property as he then and later saw and felt it, which need not be detailed, as no question is raised upon the measure of damages or amount of the verdict, if he was entitled to recover at all.

The negligence charged is excessive and reckless speed, failure to keep the car under proper control and "to operate the same at a careful and reasonable rate of speed," etc.

Defendant's chief contention is that plaintiff by his testimony is shown guilty of negligence in not looking again for the approaching car just before he entered on the east track; his previous observation having been before he drove upon the west track.

Across both tracks and the space between them was less than 15 feet. He had observed and noted the distance away of the approaching car when, as he states it, his walking horse was west of the west track "not more than 2 feet," "just west of the west track," "starting on the track then," and his judgment was that with the car more than a block away running at the common, lawful rate of not more than 15 miles an hour, as he assumed it would, he had abundant time

to cross that 15 feet, and was perfectly safe in proceeding. Even when he looked at the car the second time, within 150 feet of him, he yet thought he would get over safely, because he did not then know it was running very fast, saying, "That is the reason I thought there was no danger."

This is a case of plaintiff looking on reaching a crossing and seeing an approaching car over a block away exercising his judgment upon the safety of attempting to cross, not of failing to look.

The testimony of the motorman, called by defendant, tends in some particulars to justify plaintiff's conclusion that the car was an apparently safe distance away for him to cross had it been running at a lawful rate of speed and under proper control, as he had a right to assume it was. He testifies in part as follows:

"When I was just at the north crosswalk of Sycamore I saw Mr. Flokstra's horse and wagon. His horse's head was headed east down Pleasant street. The horse was not exactly in plain view, but I could see that he was striking straight east and continuing all the time from the first I saw him. He was about 10 feet from the west track when I first saw him. I should judge it was about a minute or a minute and a half from the time I first saw the horse until I hit him. I was then a third of the way from Sycamore street. I saw the horse when his head came across the west rail of the east track, and knew that he had to get across before I got to him or I would hit him. It was about ten seconds from the time when I first saw his head come over the west rail of the east track until I hit him. From the time I first saw the horse until I saw his head cross the west rail of the east track he had to travel about 18 feet."

The conductor of the car, who was in the back vestibule, testified that when he heard the gong and saw the passengers up in front stretching their necks he looked out on the right (or east) side of the car, and

at first did not see anything; "then I saw the head of the horse; then the body; then I saw the whole horse; then the front wheels; and then we hit. We were about a third of the block when I first looked." A witness of defendant who made measurements, testified that the distance from the north line of Sycamore street to the south line of Pleasant is 468 feet. From the west track on Lafayette avenue to the west curb of that street is 11 feet and 8 inches.

The speed of the car between the two streets was squarely an issue of fact for the jury. Fritz, the motorman, who was then running as an extra, testified that he saw plaintiff's coal wagon and horse going east toward the tracks over the west crosswalk on Pleasant street at its intersection with Lafayette avenue as he left Sycamore street; that he was then running about 14½ miles an hour, and cut off his current to coast, as it was down grade; that he was slowing down to stop for passengers waiting at Pleasant street, and when within about 200 feet of that street was going about 7 miles an hour, when he rang his gong and continued slowing down, but did not see or expect plaintiff was going to cross until he was within about 150 feet of him, when it was impossible to stop in time to avoid striking him, and the car struck the wagon "on the rear rim of the front wheel." A witness of defendant named Harris, who was a passenger and estimated the speed at "about 15 miles an hour," testified of the collision:

"The wagon didn't quite clear the track. Another instant and the wagon would have cleared it."

A witness named Van Mourik, a contractor called by plaintiff, who was a passenger on the car, describes the accident in part as follows:

"I went into the front vestibule to smoke just as we turned from Hall street into Lafayette street and continued riding in the vestibule up to the time of the

accident.   When we passed Franklin street and
turned into Lafayette, I was still in the vestibule.   I
saw Mr. Flokstra and his wagon as we came along
there in the street car.   At the time I saw him we
were about 700 or 800 feet away from the accident,
about two or three lots south of Sycamore street.
When I looked down there and saw Mr. Flokstra I was
standing pretty close to the entrance of the vestibule
facing up to the front of the car.   The first time I saw
Mr. Flokstra the head of his horse was about in the
middle of the street, and at that time the street car
was 600 or 700 or 800 feet from the horse, south from
it, about two or three lots south of Sycamore street.
*   *   *   After we passed Sycamore street the car
was going at least 30 miles an hour.   I continued to
look at the horse and wagon, but I didn't pay much at-
tention to it until we were pretty near up to it.   When
we got about 250 feet away I saw the horse and wagon
were not going to clear the track.   Up to that time the
motorman had not slackened the speed of his car at all.
When I saw the wagon was not going to clear the
track, I hollered.

"*Q.* What did you say?
"*A.* 'Stop the car.'   *   *   *
"*Q.* Up to that time had he done a single thing to
slacken the speed of that car?
"*A.* No, sir; not that I know of.
"*Q.* At that time when you hollered to him to stop
the car did you notice what he was doing, from what
you could see?
"*A.* The only thing that I would know there was a
fellow standing in the vestibule, and he was talking to
him.
"*Q.* Was he able to get the car under control at any
time before he hit the wagon?
"*A.* No, sir.
"*Q.* From what you could see?
"*A.* No, sir; no man could get that car under con-
trol more.
"*Q.* Why?
"*A.* It was going too fast and we were too close to
it when he tried to stop it."

It has often been said, where an adverse directed ver-
dict is contended for, the testimony introduced by plain-

tiff is to be taken as true and viewed in the light most favorable to his contention. The question for decision here is not whether plaintiff was or was not guilty of contributory negligence, but whether the evidence carried that question to the jury.

Plaintiff was driving a horse-drawn conveyance. Accepting his testimony as true, he took careful observation just before starting over defendant's closely adjacent tracks, and saw all there was to see which might threaten his safety. He noted a car coming from the south over a block distant, and at the rate his horse was traveling decided he would safely traverse the short space necessary to make the crossing, and twice as far, before the car would arrive, provided it was running at the customary and lawful speed, which he had a right to assume was the case. If he exercised the judgment of an ordinarily cautious and prudent man under like circumstances, he was not chargeable with contributory negligence.

We think this case falls within and is governed by the principles elaborated in the following decisions and authorities to which they make reference: *Putnam* v. *Railway*, 164 Mich. 342 (129 N. W. 860) ; *King* v. *Railway Co.*, 176 Mich. 645 (143 N. W. 36) ; *Prince* v. *Railway*, 192 Mich. 194 (158 N. W. 861) ; *Travelers' Indemnity Co.* v. *Railway*, 193 Mich. 375 (159 N. W. 528).

The judgment is therefore affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.