## MORRISON v. CITY OF DETROIT.
### No. 9597.

Circuit Court of Appeals, Sixth Circuit.
Jan. 31, 1944.

Royal W. Irwin, of Chicago, Ill. (Royal W. Irwin, of Chicago, Ill., and Maxwell I. Silverstein, of Detroit, Mich., on the brief), for appellant.

Leo A. Sullivan, of Detroit, Mich. (Rodney Baxter, Leo A. Sullivan, and A. Albert Bonczak, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from a directed verdict of no cause of action against a plaintiff in a personal injury case, arising from a collision between a streetcar and an automobile, at a street intersection in the City of Detroit.

On November 9, 1941, at about 11 o'clock at night, an automobile, driven by Harold Asplin, in which appellant was riding as a passenger, was proceeding south on Fourteenth Street, approaching the right-angle intersection of Bagley Avenue, an east-and-west street. The streetcar was coming from the east; the automobile from the north; and as the automobile was crossing the intersection in a southerly direction, its left rear wheel was struck, just as it was passing over the farther, or south, rail of the track on which the streetcar was approaching.

In view of the issues in the case, some further description of the intersection is required. Bagley Avenue commences its upward incline to the west, about a half block from the intersection, and passes over a viaduct, about fifty feet to the west of the intersection in question. Fourteenth

Street, likewise, commences its upward incline approximately a block from the intersection, seemingly passing over another viaduct just to the south of Bagley Avenue. Both the automobile and the streetcar were, therefore, proceeding uphill toward the point of collision. Furthermore, just west of Fourteenth Street, another street, Fifteenth, coming in on an angle from the north toward Fourteenth Street, intersects Bagley Avenue.

Fourteenth Street is 46 feet wide. The distance between Fourteenth and Fifteenth streets, at their intersection with Bagley Avenue, is less than the width of Fourteenth Street. Fourteenth and Fifteenth streets merge into Fourteenth on the south side of Bagley Avenue. This results in a large, open, triangular street space, some 200 feet in length, along two sides, and nearly 150 feet along the third side. Traffic at the triangle moves, therefore, in six directions at the intersection, and up or down hill in four directions.

According to testimony introduced on behalf of appellant, the driver of the car in which she was riding, in approaching Bagley Avenue from the north, came to a stop at a stop sign about 12 feet from the intersection of Bagley and Fourteenth Street. The driver made observation to his right, and saw no traffic coming from that direction. He then looked to the left, but his view was obstructed by a two-story building, which was built out to the sidewalk lines on the northeast corner of the streets. At that time, he could only see 50 feet down Bagley Avenue in the direction from which the streetcar was approaching. Seeing no traffic there, he proceeded out into the intersection in low gear. In certain details, the testimony of the driver is somewhat uncertain and contradictory, but he stated that as soon as he "got clear of the building" on his left, he again made an observation down Bagley Avenue, and saw the approaching streetcar 160 feet away. At that time, as was developed under cross-examination, the driver was level, or even, with the north curb of Bagley Avenue, and the front end of his automobile was about 5 feet south of the curb line—and 6 feet from the nearest rail of the track on which the street car was coming uphill. As he made this latter observation, the driver was shifting into second gear and was driving at a speed of between 2 to 3 miles an hour. At this time, he could have stopped his automobile in 4 feet, which would be short

of the nearest rail of the track. He testified that he could not determine the speed of the streetcar, looking at it from where he was in the intersection, but that it was "a sufficient distance away so that I thought I could cross."

The night was cold and misty. It had been raining. The asphalt surface of Fourteenth Street was wet. From the point where the driver first saw the streetcar, his automobile would have to travel approximately 26 feet to clear the track on which the car was approaching—6 feet to the nearest rail, 5 feet to the far rail, and 15 feet to take care of the length of the automobile and the overhang of the streetcar beyond the far rail. The driver testified that when he first saw the streetcar, although it was impossible to determine its speed, there was nothing to indicate that it was approaching at a "fast speed." He accelerated his engine, and as he was passing over the tracks, looked to the left and saw the streetcar 30 feet away from him. As he testified, "It had approached at a much more rapid speed than I had anticipated. * * * I could have proceeded over—a streetcar traveling a normal rate of speed—over that westbound track." The automobile was traveling between 7 and 10 miles per hour as it was passing over the far rail of the track and, at that instant, was struck by the streetcar, at the left rear wheel.

Although the verdict was directed at the conclusion of appellant's proofs, her witnesses were disputed by the testimony of the motorman of the streetcar, which was introduced under a Michigan statute providing that a defendant, or his agents, may be called by the plaintiff, who is bound by such testimony only when it is undisputed. The motorman testified that he was proceeding on Bagley Avenue at a speed of 20 miles per hour; that the electric power in the streetcar had been turned off a block away, and that the car was coasting uphill; that it was not until he had entered the intersection of Fourteenth Street and Bagley Avenue that he first saw the automobile 25 feet north of Bagley, coming at a rate of speed in excess of 25 miles per hour; that the automobile did not stop or slacken at the stop street, but came out into the intersection at the same rate of speed; that he first applied the Westinghouse air brakes when he was in the middle of the intersection; that the collision occurred immediately, and before

the brakes took effect; and that the streetcar continued on 75 feet beyond the point of impact before it was brought to a stop.

■ In reviewing a judgment on a directed verdict, the evidence is to be considered from the standpoint most favorable to the party against whom the verdict was directed. The one question here to be determined, is whether the driver of the automobile was guilty of contributory negligence as a matter of law. On this issue, in recapitulation, we have before us the following evidence of appellant (which is to be accepted in passing upon the correctness of directing the verdict), and that part of the testimony of the motorman, which can be viewed most favorably to appellant: Appellant's driver stopped 12 feet from Bagley Avenue and, thereafter, slowly entered the intersection. At the first place where he could make a sufficient observation down the street to the left, he looked in that direction and saw the approaching streetcar 160 feet away. The automobile was then traveling 2 to 3 miles an hour. It was a misty night. From his location at the intersection, the driver could not form an opinion of the speed of the streetcar, but there was nothing about it that led him to believe that it was traveling at high speed. At this time, the front end of his automobile was 6 feet from the nearest rail of the track on which the streetcar was approaching. He could have stopped in 4 feet. The automobile would have to traverse a distance of 26 feet to clear the track of the oncoming car. The driver changed his gears from low speed and, proceeding up the incline, which continued beyond the tracks, lost some speed in shifting gears—and also lost some traction because of the wet surface of the asphalt street. From the time that he made his observation when the front end of his automobile was 6 feet from the nearest rail, the driver did not look again to the left until he was passing over the near rail. His speed had increased from 2 or 3 miles an hour to 7 or 10 miles an hour. As he was passing over the near rail, he saw the streetcar approximately 30 feet away; and the left rear end of his automobile was struck just as it was proceeding over the farther rail. The streetcar motorman did nothing to diminish his speed, in the distance of 160 feet. He did not see the automobile until he entered the intersection, although he could have seen it as far as the driver of the automobile saw the streetcar—if it had been there—and, under appellant's evidence, we must assume it was; and the motorman did not apply his brakes until he was in the middle of the intersection, when it was too late for them to take effect before the collision.

To support the trial court's determination that appellant's driver was guilty of contributory negligence as a matter of law, appellee cites numerous cases relating to collisions between railroad trains or electric interurbans and automobiles. The rule applicable in such instances is, in general, not the same as between streetcars and automobiles at street intersections, and the facts in the cited cases, differentiate them from the case under consideration, with regard to elements of speed, distance, and nature of observations made by the injured parties. However, appellee also relies on certain other recent Michigan decisions, involving intersection collisions between automobiles, chief among which are Ayers v. Andary, 301 Mich. 418, 3 N.W.2d 328; Francis v. Rumsey, 303 Mich. 526, 6 N.W.2d 766, and Afman v. Kraker, 305 Mich. 504, 9 N.W.2d 692.

In the Ayers case, plaintiff's driver was proceeding in an easterly direction and approaching a paved north-south intersecting street 30 feet wide. Defendant was coming from the south. In order to pass in front of defendant, plaintiff's driver would have been obliged to traverse the west half, as well as the east half, of the north-south street. Just as plaintiff's driver was entering the intersection, he looked to his right and saw defendant 125 to 150 feet south of the intersection. He stated that he thought the other car was "far enough away" and that there was nothing about its speed to attract his attention. He continued driving his car across the intersection, accelerating his speed from 5 to 15 or 18 miles per hour, to the point of impact, and did not make a second observation until it was too late to avoid the collision. On appeal, a judgment for the plaintiff was reversed, and one entered on defendant's motion for judgment notwithstanding verdict. In its facts, the case differs from that here on review in several important particulars. The accident happened in broad daylight; the pavements were dry; the streets, presumably level; and there were no distracting circumstances present. Furthermore, in the cited case, plaintiff's driver, from the time he first saw defendant's automobile, had to

traverse a distance of approximately 40 feet (taking into consideration the length of his car), if he were to cross the intersection and avoid a collision. In the case before us, the front end of appellant's car was 6 feet from the nearest rail, when the driver first saw the streetcar 160 feet away. He had to traverse less than 26 feet to avoid a collision. The streets were surfaced with asphalt, and were wet and slippery. It was a misty night. There was a right-angle intersection, as well as a diagonal intersection, ahead of the driver; the grade of the street on which the streetcar was approaching, inclined upward to a place beyond the intersection; and the grade of the street on which the automobile was proceeding, was inclined upward to a point beyond the streetcar tracks.

The Supreme Court of Michigan, in the Ayers case, in commenting upon the statements of plaintiff's driver, that he was unable to judge of the speed of defendant's car, but that it seemed far enough away, and that there was nothing about its speed to attract his attention, observed that, apparently, by this testimony it was sought to make a case where the driver had made an observation, formed a rational judgment that it was safe to proceed, but was mistaken—therefore, requiring the issue of contributory negligence to be submitted to the jury. This contention, the court rejected, stating that one may not escape the consequences of his own negligence on such a claim or theory in a case where all the physical facts conclusively establish that by proceeding into the path of an oncoming automobile, the driver was taking a chance which no one, in the exercise of ordinary care and caution, should take; and that it overtaxed one's credulity and belied the physical facts, *under the circumstances of that case,* to conclude that the two approaching vehicles were driven to the point of collision without negligence on the part of both drivers. In our opinion, the same conclusion is not compelled from the testimony and the physical facts in the instant case.

Appellee emphasizes the statement of the court in the Ayers case, that proper observation requires some judgment of the approximate speed of an approaching car. It may be remarked that the court, however, *throughout its opinion, repeatedly* qualified the statements therein made, by a limitation to the circumstances of that case.

"* * * *  Under the circumstances of* *this case* an observation of an approaching car in close proximity without giving any consideration to the rate of speed at which it is approaching was quite futile. If one is to make a proper observation of an oncoming car *under the circumstances of the instant case,* the observation must include not only the distance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed. * * *" (Italics supplied.)

"This is not a case wherein distracting circumstances, adverse driving conditions, unforeseen or unanticipated conditions or circumstances resulted in a collision. Instead, it is a case wherein two drivers in broad daylight, with unobstructed view of each other, each with knowledge of the other's approach, in reckless disregard of their own safety and the safety of others in the vehicle, proceeded with disastrous results to the point of collision. Each driver was negligent." Ayers v. Andary, supra, 3 N.W.2d at page 329.

As to whether, under the Michigan decisions, in all circumstances, a motorist, crossing a street, must form a judgment of the speed of an approaching car, in order to avoid contributory negligence as a matter of law, the case of Prince v. Detroit United Ry. Co., 192 Mich. 194, 158 N.W. 861, suggests that such a requirement does not obtain under every state of facts. In the latter case, a driver was proceeding in a southerly direction on Woodward Avenue, toward the intersection of Piquette Avenue, in the City of Detroit. He intended to turn to the left at the intersection, to enter Piquette Avenue. There were double streetcar tracks on Woodward Avenue, and in turning off that street to the left, the driver would have to pass over them. He looked down Woodward Avenue for approaching streetcars, and could only see one to the south, which had passed him, going in the same direction, a moment before. A northbound streetcar was approaching on the east track, but when the driver made his observation before turning, the northbound car was obscured from his view by the southbound car that had passed. While the driver was turning and proceeding across the west track, he saw the northbound car approaching about 75 feet distant. He kept going, as he thought he could clear it. After making observation to the north and east, he glanced to

the south again, just as the automobile was entering on the east track. The streetcar was then 50 feet away. The driver hastened the speed of the automobile, still thinking he could cross in safety, but before he could do so, there was a collision. A judgment for a passenger in the automobile was sustained against the contention that the driver was guilty of contributory negligence as a matter of law. There appears to have been no evidence that the driver formed any judgment of the speed of the streetcar before crossing the tracks. The court, in sustaining the judgment, said:

"It cannot be said as a matter of law that he was guilty of contributory negligence in going onto the west track under such circumstances. The car was 50 feet away when he entered on the east track. At that moment he thought he could cross before the car reached him. He had a right to expect that the motorman would use reasonable care and slow down if it became necessary to enable him to cross in safety. Tunison v. Weadock, 130 Mich. 141, 89 N.W. 703, and cases. For concluding to go across the east track, we cannot say as a matter of law that he was guilty of contributory negligence, considering the situation he was in. His judgment was that he could cross in safety, and there is room for believing that his judgment would have been verified had the motorman done what the driver of the automobile had a right to expect he would do under the circumstances. This is made probable by the fact that the automobile was struck near the center of the rear wheel. A moment more and the automobile would have cleared. Under the testimony presented, the negligence of the driver of the automobile was obviously a question of fact and not of law, and the trial court was not in error in submitting it to the jury." Prince v. Detroit United Ry. Co., supra, 158 N.W. at page 862.

In Travelers' Indemnity Co. v. Detroit United Ry., 193 Mich. 375, 159 N.W. 528, the facts disclosed that a chauffeur, in calling for his employer, crossed from the right side of a street to the left, over streetcar tracks. He was attempting to find a place to park the automobile on the opposite side of the street, and while he was driving slowly north, looking for such a space, a southbound streetcar passed. Another streetcar was coming from the north, 300 or 400 feet away. The chauffeur, "thinking he had plenty of time to get over, turned his automobile to the left to cross, driving slowly upon first speed, and just as he was about to cross the west track on which the south-bound cars run this street car from the north" collided with him.

From the recitals in the opinion, the chauffeur did not know how fast the streetcar was approaching, and had formed no judgment as to its speed, when he observed it coming toward him. In sustaining the judgment for the plaintiff, the court said that, "he saw the car, which hit his left hind wheel, when it was 300 or 400 feet beyond the first street north, and thought he had plenty of time to get over ahead of it, * * *.

"This is not a case of failing to look and see the approaching car, but of reasonable judgment and prudence in attempting to cross after seeing it. If it was reasonable for him to believe he could cross safely, he was not negligent in attempting it. Provided the car was as far away as he testified, it would have to travel at an unusual rate of speed to catch him, and in forming a judgment he had a right to assume that a reasonable degree of care according to conditions would be observed by the motorman also. * * *

"Mutual care to avoid collisions was demanded and to be expected. Both parties were driving on a business street in a large city, which both had a right to use for their particular method of travel, but each in driving his conveyance was required to exercise all reasonable care and take precautions to avoid injuring others. Their duties were mutual. The questions of negligence and contributory negligence were questions of fact, properly left to the jury * * *." Travelers' Indemnity Co. v. Detroit United Ry., supra, 159 N.W. at page 530.

An honest belief that one can safely cross an intersection, of course, will not excuse contributory negligence. The question turns on the reasonableness of the attempt.

Francis v. Rumsey, supra, relied on by appellee, was a case in which the plaintiff, driving at night in a westerly direction, saw defendant to his right, traveling south along an intersecting street, and approaching the intersection. At the time he made his observation, plaintiff was about 54 feet east of the center of the intersection, or

**630**

33 feet from the street line of the intersecting street. Defendant was 150 feet north of the intersection. Plaintiff continued on, without slackening speed, and again looked to his right when it was too late to avoid a collision, which occurred when he had traveled two thirds of the way across the intersecting street. Plaintiff was more than 60 feet away from the point of collision when he made his first observation. Plaintiff's automobile was struck at its front end. It would have been necessary to travel a distance of more than 75 feet to cross in front of defendant and avoid the collision. There were no unusual circumstances prevailing at the time of the accident. On appeal, a judgment non obstante was sustained. We find no similarity to the case before the court on review; nor are the circumstances in Afman v. Kraker, supra, in any way comparable to those in the instant case.

■ Whether, in automobile accident cases, conduct is negligence as a matter of law, or is required to be submitted to a jury, may often hinge on a single element of time, speed, or distance. What would be negligence as a matter of law if a motorist, after one observation, continued to drive a certain distance, or for a certain period of time, without making a further observation, raises a question of fact when the distance in question is somewhat less, or the time period shorter. The ultimate question to be determined, of course, is whether one has acted as a prudent and reasonable person would act under the same or similar circumstances, having proper regard for his own safety and that of others. Usually, this is a question of fact.

■ This may be conceded to be a close case; but the closer the question, the nearer the issue approaches the point where it can be said that reasonable minds may differ as to whether a party is clearly guilty of negligence; and this is the criterion for resolving the issue as one of fact rather than of law. Considering the fact that appellant's driver was within the intersection when he first saw the streetcar 160 feet away; that the front end of his car was only 6 feet from the nearest rail of the track; that the street on which he was driving was inclined upward toward the tracks; that he could assume that the motorman would see him and use reasonable care to avoid running into him,

in the absence of anything to put him on notice to the contrary; that the conditions on the street made for difficulty in driving; that it was necessary to watch several corners for traffic—it is our conclusion that the failure of appellant's driver to make a second observation to the left before proceeding to cross the track, or his attempt to cross the track, relying on the observation which he made from a point of safety, presented a question of fact to be submitted to the jury as to whether the driver acted as a reasonably careful man would act under the same or similar circumstances, having due regard for his own safety and that of the passengers in the automobile. There are too many exceptional circumstances in this case to sustain the holding that contributory negligence entitled the appellee to a directed verdict.

Accordingly, the judgment entered on the directed verdict of no cause of action, is reversed and the case remanded to the district court for a new trial.