GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORP., LTD., a foreign corporation, Plaintiff-Appellant,

v.

FINEGAN & BURGESS, INC., a Michigan corporation, Defendant-Appellee.

No. 16065.

United States Court of Appeals Sixth Circuit.

Oct. 9, 1965.

David J. Watters, Jr., Detroit, Mich., Ward, Plunkett, Cooney, Rutt & Peacock, Charles T. McGorisk, Detroit, Mich., on brief, for appellant.

Lawrence A. Bohall, Detroit, Mich., Cary, BeGole & Martin, Detroit, Mich., on brief, for appellee.

Before WEICK, Chief Judge, and MILLER and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This appeal involves a "hold harmless" indemnity agreement between a general contractor and one of its subcontractors. The general contractor was found liable for negligent injury and paid a $14,000 judgment. In this same suit the jury found no cause for action against the subcontractor. Plaintiff-appellant insurance company, having paid this judgment, now seeks as subrogee of the general contractor to recover against the subcontractor under the indemnity agreement.

At trial at the completion of plaintiff's proofs, defendant offered no evidence, and plaintiff and defendant both moved for directed verdicts. District Judge Machrowicz granted the motion of defendant. Plaintiff appeals from this directed verdict.

This case arises out of an accidental injury suffered by Robert Kania, a project engineer for the Wayne County Road Commission. At the time Kania was representing the Road Commission in supervising the construction of a hangar at the Detroit Metropolitan Airport, which is owned and operated by the Road Commission.

Plaintiff-appellant herein, General Accident Fire & Life Assurance Corp., Ltd., was the insurer for the general contractor, A. J. Etkin Construction Co. Defendant-appellee, Finegan & Burgess, Inc., was one of Etkin's subcontractors charged with fabricating and erecting a large electric sign for American Airlines for which the Wayne County Road Commission was building the hangar.

The contract between Etkin and Finegan & Burgess contained the following indemnity clause:

> "The Subcontractor shall save and hold harmless the General Contractor and Owner from and against, all suits for claims that may be placed upon any alleged injury (including death) to any person or property that may occur, or that may be alleged to have occurred, in the course of the performance of this Contract by the Subcontractor, whether such claim shall be made by an employee of the Subcontractor, or by any other person, and whether or not it shall be claimed that the alleged injury (including death) was caused through a negligent act or omission of the Subcontractor. At his own epense, the Subcontractor shall defend any and all such actions, and pay all charges of attorneys, and all costs and other expenses arising therefrom."

On the date of the accident, defendant had completed all of its construction work

on the sign; but final inspection, acceptance and payment by the Wayne County Road Commission had not occurred.

▮ Since we review a verdict directed against plaintiff, we view the facts from the point of view favorable to plaintiff (as plaintiff has set them forth) from which the jury would have had a right to view them: [1]

"American Airlines requested use of the sign prior to the time they occupied the completed hangar. A meeting was arranged for the evening of June 2, 1958. Robert Kania was Project Engineer for the Wayne County Road Commission in charge of the various construction projects around the Airport at that time.

" 'The purpose of my being there that evening was to make an inspection of the 10-foot sign on the west elevation of the American Airlines hangar, for the purpose of accepting or not accepting the sign, as the Board's representative, as the owner's representative.

" ' * * * If American was satisfied with the sign, and if the Board or myself, as the Board's representative, was satisfied with the operation of this sign, and the fact that it had been installed in accordance with plans and specifications, we would accept that sign from the general contractor and put the warranty into effect as of the date we accepted the sign.

" ' * * * two of American Airlines' representatives were at the job site, Mr. Burgess arriving shortly after my arrival.'

"There was no one there from A. J. Etkin Co. The only one representing the sign construction company was Mr. Burgess.

"Francis J. Burgess was vice-president of Finegan-Fontana-Burgess, Inc. He was in charge of field operations, field installations for the firm. Mr. Finegan would go out and get the business, handle the office and financial work and drawings, and Burgess would go out on the job and install the signs. On the job as far as installation was concerned, Burgess was the top man, subject to Finegan's approval.

"According to Mr. Burgess, the only contract involved in his going out there that evening was his subcontract with the A. J. Etkin Construction Co. for the erection of this sign. He went out for the purposes of participating in an inspection of the sign.

" 'I was asked by Mr. Finegan if I would make arrangements for that evening to assist in turning on the lights, in checking the lighting. * * *

" 'I arrived at approximately 8:30 p. m. to check the lights for illumination and also to *turn the sign lights off.'* (Emphasis Supplied.)

"A visual inspection of the sign from outside the building was made but from a position so close Kania could not view the entire sign. One of the Airlines representatives went to the terminal building to get the other one, leaving Kania and Burgess alone. Kania relates what happened:

" 'Not having completed the inspection with all of the people that were requested to attend the inspection that evening, I indicated to Mr. Burgess that I wanted to further view the sign with the American Airlines' people, and from a further distance, and Mr. Burgess indicated he had to leave.'

"Mr. Burgess had brought his wife and children along on this 'opening night' for the sign and they were in the car.

" 'He indicated he wanted to leave and when he did that I requested

1. Stevens v. Continental Can Co., 308 F. 2d 100 (C.A.6, 1962), cert. denied, 374 U.S. 810, 83 S.Ct. 1702, 10 L.Ed.2d 1034 (1963); Morrison v. City of Detroit, 140 F.2d 625 (C.A.6, 1944).

him to show me where the sign could be turned off after completion of the inspection with the American Airlines' representatives.'

"Burgess agreed to take Kania up to show him the location of the switch. It was dark. Burgess had a flashlight and was leading Kania. Kania fell, and sued for his injuries in Circuit Court, obtaining judgment against A. J. Etkin Construction Co., in the amount of $14,771.35. Plaintiff paid $1800.10 in defense of the Circuit Court action, Plaintiff's Ex. 3, a statement for the attorneys' fee was received into evidence, without objection.

"The judgment was paid by plaintiff, General Accident, Etkin's liability insurance carrier. It became subrogated to A. J. Etkin Company's rights and brought the instant action for indemnity against Finegan & Burgess, Inc. under a hold harmless or indemnity provision of the subcontract between Etkin and Finegan & Burgess.

"At the close of plaintiff's proofs, defendant moved for a directed verdict, indicated he had no proofs to offer, and plaintiff then moved for a directed verdict. The motions were argued together and the defendant's motion was granted."

Four undisputed facts should be added. First, no representative of Etkin, the general contractor, ever showed up at the June 2 meeting. Second, Etkin had performed the carpentry work on the hangar itself and had left a railing off the catwalk from which Kania fell. Third, the switch in question was not a part of the Finegan & Burgess subcontract, but had been installed by another subcontractor. Fourth, Kania had previously sued Etkin and Finegan & Burgess in state court asserting negligence as to each, and the final judgment in Wayne County Circuit Court found damages against Etkin and "no cause for action" as to Finegan & Burgess.

The parties agreed at trial that the only question to be litigated pertained to "whether or not the injury to Kania occurred in the course of the performance of the contract which has been received into evidence."

In a brief opinion District Judge Machrowicz held as follows on this point:

"It is the opinion of this Court that the injuries were not sustained in the performance of the duties called for by the contract. Finegan & Burgess, Incorporated had nothing to do with the construction of the hangar in which the accident occurred, nor had it anything to do with putting the switches in. The switches were put in by another subcontractor of the Etkin Company.

"It is the opinion of the Court that the act of attempting to direct Kania to the place where the switch was was not an act required under the contract. The meeting called for on the day the accident occurred was one to satisfy the Airline Company and was not one that was pursuant to the contract. As a matter of fact, the testimony I believe of Kania was that it was a departure from, it was outside of the contract. The acceptance that at the time was contemplated was not one required by the contract.

"The Court feels that this case comes under the heading of cases similar to the Employers Casualty Co. v. Howard P. Foley, Inc., 158 F.2d 363, which has been referred to in the arguments and which, despite contentions of the plaintiff to the contrary, presents a situation very similar in many respects to the one we have here.

"Also, the case of Zurich General Accident [&] Liability Insurance Co. v. Lieberman [Ohio Com.Pl.], 71 N.E. 281."

It should be borne in mind that under Michigan law a subrogee insurance company had only such rights as its insured, Etkin Construction Co., had. Indemnity Insurance Co. of North America v. Otis Elevator Co., 315 Mich. 393, 24 N.W.2d 104, 171 A.L.R. 266 (1946).

Still further, it should be borne in mind that the final judgment entered in a Michigan court of competent jurisdiction in the suit filed by Kania, must be read as a finding that Etkin was guilty of negligence, and that Finegan & Burgess was not guilty of negligence in this particular accident.

Plaintiff's suit, of course, does not sound in negligence; plaintiff's rights in this suit are based exclusively upon the contract Etkin had with Finegan & Burgess.

On this record it is admitted that Etkin drafted the contract. The meeting of June 2 was not one squarely called for by the language of the Finegan & Burgess subcontract. Finegan & Burgess had no contractual relationship with either the Wayne County Road Commission or American Airlines. But its contract did require Finegan & Burgess to "assume toward him [Etkin] all the duties and responsibilities that he [Etkin] * * * assumes toward the owner."

■ This last language could perhaps be construed broadly enough (when coupled with the "hold harmless" indemnity agreement) to make Finegan & Burgess liable for any accident that happened in the course of the general contract, whether Finegan & Burgess was in any way involved or not. But it is clear that such contracts when ambiguous are construed strongly against the maker. Wadsworth v. New York Life Insurance Co., 349 Mich. 240, 256–258, 84 N.W.2d 513 (1957). Particularly should this be so when, as here, the result would be to allow the maker of the contract to recover for his own negligence, although the contract does not say so in clear and unvarnished language. Employers Casualty Co. v. Howard P. Foley Co., 158 F.2d 363 (C.A. 5, 1946).

■ We feel, as did the District Judge, that the undisputed facts concerning this meeting indicate clearly that it was one which it was the responsibility of the general contractor Etkin to call and supervise. Doubtless, under the assumption of duties clause Etkin could

have required Finegan & Burgess' attendance and services. But this fact does not place this inspection (or the liabilities arising out of it due to Etkin's negligence) in "the course of the performance of this contract by the subcontractor."

We recognize that this is a restricted interpretation of the contract language. But Etkin wrote this contract, and it seems reasonable to us (as it did to the District Judge) to hold that before it can properly be interpreted so as to make a subcontractor liable for Etkin's own negligence in the performance of Etkin's own work, there should be plain language which specifically apprised the subcontractor of this unusual result.

In granting the directed verdict the District Judge quoted what we believe to be consistent with Michigan law in interpretation of insurance contracts:

"[T]his Court is in full agreement with the statement of Judge Freeman of this District in the case of Buffa v. Gen. Motors Corporation, 131 F.Supp. 478, when he said on page 482:

" 'As a general proposition, a contract of indemnity which purportedly indemnifies against the consequences of one's own negligence is subject to strict construction and will not be so construed unless it clearly appears from the language used that it was intended to have that effect.' "

In an early and much quoted case, the Seventh Circuit in interpreting an indemnity agreement said:

"Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended

to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified." North American Ry. Const. Co. v. Cincinnati Traction Co., 172 F. 214, 216 (C.A. 7, 1909).

Martin v. American Optical Co., 184 F.2d 528 (C.A. 5, 1950); Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 195 F.2d 467 (C.A. 7, 1952), cert. denied, 344 U.S. 832, 73 S.Ct. 39, 97 L.Ed. 648 (1952); Ocean Accident & Guarantee Corp. v. Jansen, 203 F.2d 682 (C.A. 8, 1953); Annot., 175 A.L.R. 8 (1948).

Affirmed.